NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant–Appellant,

v.

MURRAY SHEET METAL COMPANY, INCORPORATED, Appellee,

and

Arkwright Mutual Insurance Company, Plaintiff.

No. 91–1779.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1992.

Decided June 19, 1992.

Mark J. Seplak, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., argued (James T. Ferrini, Stephen J. Schlegel, and Susan J. Condon, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., and John Andrew Smith, Kay, Casto, Chaney, Love & Wise, Charleston, W.Va., on brief), for defendant-appellant.

W. Henry Lawrence, IV, argued (Jacqueline A. Wilson, on brief), Steptoe & Johnson, Clarksburg, W.Va., for appellee.

Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and RAMSEY, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

NIEMEYER, Circuit Judge:

We address in this appeal the extent to which the work product rule of Fed. R.Civ.P. 26(b)(3) provides immunity from discovery of 26 documents withheld from discovery in this case.

In connection with litigation pending in the Southern District of New York between two insurance companies to resolve the proper apportionment of losses occasioned by a fire in West Virginia, National Union Fire Insurance Company, one of the parties, caused a subpoena duces tecum to be issued by the United States District Court for the Southern District of West Virginia to the custodian of records of Murray Sheet Metal Company, Inc., in Parkersburg, West Virginia, who is not a party to the New York proceedings.[1] Murray, whose employees were present at the time of the fire, was requested to produce documentation relating to the fire and Murray's investigation of it. Murray refused to produce 26 of the requested documents, contending, among other things, that the doc-

---

1. Fed.R.Civ.P. 45 authorizes the district court to issue and enforce a subpoena duces tecum in connection with a deposition to be taken in its district in an action pending in another district.

uments constituted work product as defined by Fed.R.Civ.P. 26(b)(3). On National Union's motion to compel production, the district court, without reviewing the documents, denied the motion on the basis of Murray's description of them. 771 F.Supp. 149. The court concluded that (1) the documents "were prepared after the April 4, 1990, fire and in the investigation of that incident" and were prepared "to preserve and document evidence in contemplation of future litigation," and (2) National Union, having failed "to demonstrate that it [was] unable without undue hardship to obtain the substantial equivalent of the materials by other means," failed to establish a substantial need for the documents. Because the application of the work product rule requires an inquiry more detailed than that conducted by the district court, we remand for further proceedings in accordance with this opinion.

## I

On April 4, 1990, a fire broke out in a General Electric Company plastics plant located in Washington, West Virginia. The fire began at a location in the plant which was at the time being renovated by Murray Sheet Metal Company. Although the direct fire damage was relatively minor, extensive polychlorinated biphenyl (PCB) contamination was discovered in the area, causing damage to portions of the building, tools, equipment, and even clothing of persons working there. The cleanup costs are estimated in the millions of dollars. The insurance company providing coverage to General Electric for the plant, Arkwright Mutual Insurance Company, undertook to pay the losses, including cleanup costs, and instituted suit in the Southern District of New York against National Union Fire Insurance Company for reimbursement under a reinsurance agreement. National Union is resisting payment because it believes that the PCB contamination was not caused by the fire but rather was a preexisting condition at the site and therefore not covered by its insurance. It also complains that it was not notified of the fire for over a month and then was not provided access to the plant.

Promptly after the fire, Murray Sheet Metal Company began an investigation into the circumstances of the fire and the PCB contamination. With its own employees, it gathered data concerning the PCBs, including information about their use at the plant, and the source and extent of contamination. Murray conducted medical tests of its employees and analyzed their clothing. Murray personnel also obtained statements from other Murray employees who worked at the plant. Murray's initial investigation was conducted on April 5, 1990, principally by Ruth Morrison, Murray's safety director, along with other employees. Murray also notified its own insurance company, which in turn hired an independent adjusting company, Gay & Taylor, to investigate the fire. Three days after the fire, on April 7, 1990, representatives of Gay & Taylor entered the plant and, together with representatives of General Electric and its insurance company, conducted a further investigation and performed testing for PCB contamination.

Because Gay & Taylor is located in Alabama, National Union initiated discovery proceedings in the Northern District of Alabama to obtain the product of Gay & Taylor's investigation. Following a dispute about whether the work product rule immunized the information from discovery, the Alabama court granted National Union's motion to compel discovery and ordered that Gay & Taylor produce documents related to PCB contamination, but not related to the causes or origins of the fire or to Murray's culpability for the fire. That order is on appeal in the Eleventh Circuit. *See Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.*, No. CV91–Y–0826–S (N.D.Ala. May 31, 1991), *appeal docketed*, No. 91–2117 (11th Cir. July 1, 1991).

Similarly, to discover the investigatory documentation developed by Murray's employees, who are located in West Virginia, National Union filed a notice of deposition in the Southern District of West Virginia directed to the custodian of records at Murray to appear at deposition and produce Murray's documents "regarding the exist-

ence, origin, source, concentration, spread, or location of PCB's, et al. at the premises" and relating to "any cause and origin investigation." In connection with the notice of deposition, National Union caused a subpoena duces tecum to be served on Murray requiring it to produce the documents. In response, Murray produced a substantial amount of material but withheld certain documents which it described in a "Privileged Documents Log of Murray Sheet Metal Co., Inc. to Subpoena Duces Tecum Dated March 1, 1991." In the log, Murray listed the 26 documents, giving for each a general description, its author, date, recipient, and custodian. Murray also stated the reason that each was being withheld. The documents withheld include witness statements taken by Murray's personnel immediately after the fire and later; memoranda authored by Murray's personnel relating to PCB findings, contents of a "gang box," clothes worn by employees, estimated costs of repair, and meetings; bills for medical treatment of employees; and PCB data and test results.

National Union filed a motion to compel the production of the 26 documents and offered "to limit disclosure to this litigation." From the court's order denying production of the documents, this appeal followed.

## II

Proper application of the work product rule requires recognition and accommodation of two competing policies. On the one hand, fairness in the disposition of civil litigation is achieved when the parties to the litigation have knowledge of the relevant facts, and therefore the discovery rules are given "a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). On the other hand, our adversary system depends on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client. The court in *Hickman* elaborated:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Id.* at 510–11, 67 S.Ct. at 393.[2] *See also Duplan Corp. v. Moulinage et Retorderie*, 509 F.2d 730, 735–36 (4th Cir.1974), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975). The policies of protecting work product and permitting liberal discovery are accommodated in the Federal Rules of Civil Procedure by protecting absolutely the "mental impressions, conclusions, opinions, [and] legal theories ... concerning the litigation" but permitting discovery of other work product upon a showing of "substantial need." Fed.R.Civ.P. 26(b)(3).

Thus, the jurisprudence of Rule 26(b)(3),[3] which is a codification of the hold-

---

**2.** As Justice Jackson more colorfully stated in his concurrence: "Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman*, 329 U.S. at 516, 67 S.Ct. at 396 (Jackson, J., concurring).

**3.** The applicable provision of Rule 26(b)(3) reads:

> **Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule

and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclo-

ing of *Hickman* and its progeny, *see Doe v. United States (In re Doe)*, 662 F.2d 1073, 1078 (4th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982), divides work product into two parts, one of which is "absolutely" immune from discovery and the other only qualifiedly immune. As a philosophical extension of the attorney-client privilege, which itself is not here involved,[4] the pure work product of an attorney insofar as it involves "mental impressions, conclusions, opinions, or legal theories ... concerning the litigation" is immune to the same extent as an attorney-client communication. *Cf. Duplan*, 509 F.2d at 735–36. This is so whether the material was actually prepared by the attorney or by another "representative" of the party. Fed.R.Civ.P. 26(b)(3). All other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of "substantial need."[5] Thus in resolving the question of whether matters are immune from discovery because of a work product rule, attention must be turned first to whether the documents or tangible things were prepared in anticipation of litigation or for trial and then, for materials other than legal opinion or theory, to whether the requesting party has demonstrated a substantial need.

We take notice of the fact that members of society tend to document transactions and occurrences to avoid the foibles of memory and to perpetuate evidence for the resolution of future disputes. And because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet, "[t]he mere fact that litigation does eventually ensue does not, by itself, cloak materials" with work product immunity. *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir.1983). *See also Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C.1982) ("The fact that a defendant anticipates the contingency of litigation resulting from an accident or an event does not automatically qualify an 'in house' report as work product."). The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. Thus, we have held that materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3). *See Goosman v. A. Duie Pyle, Inc.*, 320 F.2d 45, 52 (4th Cir.1963). Following any industrial accident, it can be expected that designated personnel will conduct investigations, not only out of a concern for future litigation, but also to prevent reoccurrences, to improve safety and efficiency in the facility, and to respond to regulatory obligations. Determining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question.

Even when documents and tangible things are prepared in anticipation of litigation or for trial, to the extent they do not involve the mental impressions, conclusions, opinions, or legal theories concerning the litigation, they may be discoverable on

---

sure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

4. The work product immunity, which is frequently referred to as a "work product privilege," is not to be confused with the attorney-client privilege which arises from different circumstances and is subject to different protections and waivers. *See, e.g., United States v. Pollard (In re Martin Marietta Corp.)*, 856 F.2d 619 (4th Cir.1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989).

5. The work product immunity never reaches to protect from discovery actual evidence taken from the scene or facts about the scene or incident. Facts stated by witnesses may be discovered by deposition or interrogatory. We are discussing only formulations of the facts contained in documents actually prepared for litigation. For a fuller discussion of the distinction, *see* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2023, at p. 194 (1970).

a showing of "substantial need." The documents falling within this classification are clothed with a qualified immunity that is grounded on a proprietary aspect of the work. The immunity for this class of document is little more than an "anti-freeloader" rule designed to prohibit one adverse party from riding to court on the enterprise of the other. Thus the Advisory Committee for the 1970 amendment that introduced the "substantial need" requirement noted, among other things, that each side to litigation "should be encouraged to prepare independently" and that "one side should not automatically have the benefit of the detailed preparatory work of the other side." Fed.R.Civ.P. 26, Advisory Committee Notes, 1970 amend., *reprinted in* 48 F.R.D. 487, 501 (1970). The policy, accordingly, may be outweighed by a showing based on the document's relevance and importance to the issues in the litigation and the unavailability of the facts in the documents from other sources. *See id.*

In short, to resolve whether Rule 26(b)(3) grants immunity from discovery, the district court must determine, from an examination of the documents or their circumstances, whether they were prepared in anticipation of litigation or for trial. If so and if the documents embody opinions and theories about the litigation, discovery is refused without further inquiry. If opinions and theories about the litigation are only part of a document otherwise discoverable, the court may require production of a redacted copy. With regard to *other* documents falling within the scope of Rule 26(b)(3), the court must determine whether the requesting party has a substantial need for them, taking into account their relevance and importance and the availability of the facts from other sources.

### III

■ The record before us, as before the district court, consisting mainly of the "Privileged Documents Log," is inadequate to conduct the necessary analysis in this case. Consequently, we remand the case to the district court to review the documents and their circumstances, as neces-sary, and apply the Rule 26(b)(3) principles in the first instance. Without finally resolving the issue on any specific document, however, in the interest of judicial economy, we do make some observations for general consideration upon remand.

Several documents (nos. 8, 10, 11, 12, 13, 14) appear to be written witness statements taken by Murray's safety director and others on April 5, 1990, immediately after the fire. Because the statements were taken by persons charged with safety responsibilities, we question whether the documents were prepared in anticipation of litigation or for trial. Assuming they were and they do not contain opinions and trial strategies, National Union would have to demonstrate a substantial need for their production. When evaluating a party's need for statements taken immediately after an accident, we have observed:

> Statements of either the parties or witnesses taken immediately after the accident and involving a material issue in an action arising out of that accident, constitute "unique catalysts in the search for truth" in the judicial process; and where the parties seeking their discovery was disabled from making his own investigation at the time, there is sufficient showing under the amended Rule to warrant discovery.

*McDougall v. Dunn,* 468 F.2d 468, 474 (4th Cir.1972). *See also Goosman,* 320 F.2d at 50–51 (considering similar facts to be "good cause" for a discovery order under a superseded version of Rule 34). On the other hand, statements taken later (for example, nos. 9, 22) are more likely to contain information otherwise available to National Union through its own efforts to obtain statements or to take depositions.

Other documents withheld raise more serious doubts about whether they were prepared in anticipation of litigation or for trial. For example, document no. 2 appears to constitute a collection of medical bills submitted by health care providers who examined potentially injured persons. Document no. 21 is undated and was prepared by Koppers Company about "coal tar pitch composition."

Numerous documents were authored by Mr. Hastings, a Murray employee whose function was not specified, immediately after the fire and later. While work product need not be the direct product of an attorney, the fact that Hastings prepared many of these documents before ever contacting counsel or Murray's insurance company may shed light on whether they were prepared *because* of litigation. In any event, if they contain opinions, theories, and trial strategies, as suggested by Murray about some of them, those documents would be immune and protected to the same degree as if they fell within the attorney-client privilege.

Finally, we observe that because the district court ruled only on the work product immunity, it did not reach other grounds given by Murray for refusing to produce the documents and therefore neither do we. This would only become necessary if the immunity of Rule 26(b)(3) does not attach.

Accordingly, we remand the case for further proceedings in accordance with this opinion.

REMANDED.