**ARKWRIGHT MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE CO. OF PENNSYLVANIA, Defendant,**

and

**Murray Sheet Metal Construction Company, Interested Party.**

Civ. A. No. 6:91–MC–00028.

United States District Court, S.D. West Virginia, Parkersburg Division.

April 29, 1993.

Stephanie Holzback, Newman & Bower, Gregory T. LoCasale, Newman & Harrington, New York City, for plaintiff.

John Andrew Smith, Kay, Casto, Chaney, Love & Wise, Charleston, WV, Stephen J. Schlegel, Jeanette M. Bourey, Susan Condon, Richard M. Kaplan, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, IL, for defendant.

W. Henry Lawrence, IV, Steptoe & Johnson, Clarksburg, WV, Robert W. Full, Goodwin & Goodwin, Parkersburg, WV, for Murray Sheet Metal.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the objections of Murray Sheet Metal Company Inc. (Murray), a non-party, to the Magistrate Judge's disposition of two motions: (1) National Union's renewed motion to compel Murray to produce certain documents; and (2) Murray's motion to quash National Union's subpoena of Michael Kendrick. The Magistrate Judge granted the motion to compel and denied the motion to quash.

The Court heard argument and took evidence at a hearing on Murray's objections. For reasons set forth more fully herein, the Court **ADOPTS** in large measure, and incorporates herein, the Magistrate Judge's Report–Recommendations. The Court **GRANTS** the renewed motion to compel as to all documents except numbers 7, 23, and 24 and **DENIES** Murray's motion to quash. The facts necessary to this ruling are briefly set forth below.

This action arises out of an April 4, 1990, fire at the General Electric Technology Center in Washington, West Virginia. The fire caused extensive PCB contamination to portions of the building. Arkwright Mutual Insurance Company (Arkwright) paid the losses on General Electric's (G.E.'s) claim and now seeks partial reimbursement from National Union in a New York civil action under a reinsurance agreement.

National Union resists reimbursement, claiming the PCB contamination at the fire site is a preexisting condition. National Union also claims it was not notified of the fire until June 18, 1990, and that when it sought to examine the site in August 1990, G.E. denied it access.

Murray's involvement in this dispute stems from its employees use of a cutting torch in close proximity to the fire site. After the fire, Murray investigated the circumstances of the fire and the PCB contamination with its employees. Murray prepared, *inter alia*, twenty-five documents in the course of this investigation. These withheld documents[1] include witness statements taken immediately after the fire, information on PCB contam-

---

1. There were originally 26 documents in dispute. Murray's primary objection to producing these documents is based on the work-product privilege contained in Rule 26(b)(3) of the Federal Rules of Civil Procedure. The Magistrate Judge, however, concluded that document 17 was protected by the attorney-client privilege. The Court accepts this conclusion. Accordingly, the instant discussion has no application to document 17.

Further, the privileged documents log raises other grounds of privilege for certain documents in addition to the work-product privilege. Murray has not raised these arguments on appeal. Accordingly, the Court does not address them.

ination, contents of a "gang box," and clothes worn by employees.

Murray's insurance carrier also hired Michael Kendrick of UBA Fire and Explosion Investigators to examine the fire scene. Mr. Kendrick allegedly made several inspections of the fire site and took many samples of material for analysis. He visited the fire site as early as April 6, 1990—two days after the fire.

## I. THE DOCUMENTS

■ The Magistrate Judge, in accordance with *National Union Fire Ins. Co. v. Murray Sheet Metal, Inc.*, 967 F.2d 980 (4th Cir.1992), performed an *in camera* inspection

of the documents and applied the appropriate 26(b)(3) analysis to each.[2] The Magistrate Judge concluded some documents may have been prepared in anticipation of litigation, while others were clearly not. As to the former, the Magistrate Judge concluded National Union had demonstrated "substantial need" for access to the documents.

The Court adopts the conclusion of the Magistrate Judge as to the nature of the documents at issue.[3] The principal basis for a finding of substantial need in this case is the undisputed assertion of National Union that it was not even notified of the fire until more than two months after its occurrence.[4]

2. The Court notes the *sub silentio* holding of *National Union* that Rule 26(b)(3) applies to non-party Murray even when that Rule expressly limits its application to parties or their representatives. The Rule provides:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial *by or for another party or by or for that other party's representative* (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

(emphasis added).

The *National Union* case did ˏnot state the rationale for applying Rule 26(b)(3) to Murray and the conclusion is contrary to the language of the Rule and established precedent. *See, e.g., Federal Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983) (stating in dicta "the literal language of the Rule protects materials prepared for *any* litigation or trial *as long as they were prepared by or for a party* to the subsequent litigation.") (citation omitted) (emphasis added in later portion); *In re Cal. Pub. Util. Comm'n*, 892 F.2d 778, 781 (9th Cir.1989) (holding 26(b)(3) "on its face, limits its protection to one who is a party ... to the litigation in which discovery is sought.") (citations omitted); *Hawkins v. South Plains Int'l Trucks, Inc.*, 139 F.R.D. 682, 684 (D.Colo.1991) (stating "All recent caselaw [on the subject] is in accord"); 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 (1970) (stating "At the same time documents prepared for one who is not a party to the present suit are wholly unprotected even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit").

The Court has performed the 26(b)(3) analysis dictated by *National Union*, as it is the law of the case. However, the Court is concerned about the implications of *National Union's* veiled holding that Rule 26(b)(3) applies to non-parties.

3. Murray asserts the brevity of the Magistrate Judge's Order is sufficient grounds for reversal or remand. The Court disagrees. First, the court in *National Union* directed only that "the district court ... review the documents and their circumstances, as necessary, and apply the Rule 26(b)(3) principles in the first instance." *National Union* did not specifically direct this Court to incorporate its detailed 26(b)(3) analysis in its written ruling. The court in *National Union* only remanded for a more detailed review of the documents at issue because they were not reviewed in detail prior to appeal.

Further, as set forth below, the Court concludes in more detailed fashion than the Magistrate Judge that substantial need has been demonstrated by National Union. Even assuming *arguendo* that the documents were prepared in anticipation of litigation, National Union's substantial need entitles it to discovery of most of the documents. *See National Union*, 967 F.2d at 984. The Court concludes the Magistrate Judge satisfied the Fourth Circuit's directions in reviewing the requested documents.

4. The mere passage of time is not the only reason for a finding of substantial need. While the record is often unclear on the timing, it reflects the area surrounding the fire site was altered in several respects. First, a letter from Arkwright's counsel to National Union dated July 29, 1991, stated

> Certainly, I never meant to suggest that Areas 5 and 6 have been preserved in amber since the fire: some debris, obstructions, and walls have been removed, wipe samples have been taken, etc.... If your client wants to inspect those areas before cleaning, it must take them as they are: whatever changes have been made cannot be unmade.

Depositions of Murray employees illustrate the same point. One testified a cleaning company was called in the day after the fire to perform mopping, vacuuming, and other work. Dep. of Robert Lockhart at 187, 209. Another testified

However, Murray essentially asserts a three-fold argument that new evidence on the issue of substantial need has come to light since the Magistrate Judge's ruling.

First, Murray asserts National Union already possesses the equivalent of the Murray employee witness statements contained in the 25 documents. Specifically, Murray asserts that G.E. took statements from these same witnesses in the days following the fire and National Union has now obtained them from G.E. through discovery in the New York action. However, counsel for National Union stated at argument that only three Murray employees gave statements to G.E. and only one of those employees was actually in the room where the fire started. Tr. of Hr'g at 14. Further, the statements of even those three employees appear to be substantially dissimilar to those employee statements in the possession of Murray.[5]

Second, Murray offers three letters which purport to show that National Union was not denied access to investigate the fire site. This showing is without merit. The earliest of these letters offering site inspection to National Union is dated August 13, 1990—over four months after the fire, and none of the letters challenge the principal rationale for the presence of substantial need—the two-month delay in notifying National Union of the fire.

Third, Murray asserts National Union obtained documents from G.E. in mid-February which relate to the PCB contamination at issue. Murray contended at argument that the G.E. materials are the "substantial equivalent"[6] of the PCB information sought from Murray. The Court is satisfied from the affidavit of Jack Murray and the nature of the PCB documents in issue that they were prepared in anticipation of litigation.[7]

---

that within two days of the fire, in a room near the fire site, he washed tables, chairs, and swept the floor. Dep. of Lonnie Lucky at 81. He noted the tables had "smoke" on them. *Id.; see also* Dep. of Daniel Berry at 163–64. John Berry stated that within a few days of the fire he removed roofing and insulation from a site apparently near the fire. Dep. of John Berry at 180–83.

Murray challenges National Union's assertion that the area in and around the fire site was substantially altered. This challenge is based upon an affidavit of Harry Hastings, a Murray employee, which was submitted to the Court on March 8, 1993. The affidavit states "That the knowledge and information of the undersigned herein *is based upon his conversations with G.E. personnel involved with the work described.*" The Court concludes this affidavit is not based upon the personal knowledge of the affiant, is hearsay, and is therefore improper. *EEOC v. Clay Printing Co.,* 955 F.2d 936, 945 (4th Cir.1992).

**5.** For instance, counsel represented at argument that the G.E. statement of employee John Berry was a mere six pages compared with the 21 page statement Berry gave to Murray. Tr. of Hr'g at 15.

Further, National Union offered testimony of Murray employees that it deposed in late 1992 and early 1993. There appears to be a general memory failure of these witnesses as to the events surrounding the day of the fire and the events which followed in the days thereafter. Murray admits as much, but asserts the blame lies with National Union for not deposing the witnesses earlier. This argument has some merit, but it is undisputed that National Union was not notified of the fire until over two months after its occurrence. Had National Union imme-

diately deposed the Murray employees even after this passage of time a loss of recollection by the employees would still likely have been encountered.

Murray's attempt to refute substantial need on this basis also ignores the settled law in this circuit:

Statements of either the parties or witnesses taken immediately after the accident and involving a material issue in an action arising out of that accident, constitute 'unique catalysts in the search for truth' in the judicial process; and where the parties seeking their discovery [were] disabled from making [their] own investigation at the time, there is sufficient showing under the amended Rule to warrant discovery.

*National Union,* 967 F.2d at 985 (citing *McDougall v. Dunn,* 468 F.2d 468, 474 (4th Cir.1972)).

**6.** Rule 26(b)(3) provides, in part, that a party is not entitled to work-product material unless it is shown that "the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

**7.** The Court is guided in this conclusion by the standard set forth in *National Union.* In deciding whether a document is prepared in anticipation of litigation

[t]he document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.... Determining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question.

■ Counsel for National Union stated at argument that "the information we're seeking from Murray is not contained in the information we got from G.E. nor is it available from any other source." Tr. of Hr'g at 21. Beyond this statement, National Union offers little in the way of proof that the PCB information obtained from G.E. is not the substantial equivalent of the material contained in documents 7, 23, and 24.[8] Accordingly, National Union has failed to meet its burden under Rule 26(b)(3), and Murray need not produce documents 7, 23, and 24.

The Court, therefore, **GRANTS** National Union's renewed motion to compel with exception to documents 7, 23, and 24.

## II. THE DEPOSITION

■ National Union seeks to depose Mr. Kendrick concerning his inspection of the fire site and subpoenaed him for a deposition. Murray seeks to quash the subpoena pursu-ant to Federal Rules of Civil Procedure 26(b)(4) or 45(c)(3)(B).

Rule 26(b)(4)(B) reads as follows:

*A party* may discover facts known or opinions held by an expert who has been retained or specially employed *by another party* in anticipation of litigation or preparation for trial....

(emphasis added).

This unambiguous language clearly and unequivocally limits application of 26(b)(4)(B) to discovery disputes between *parties*. It is undisputed that Murray is not a party to the action between National Union and Arkwright.[9] Therefore, 26(b)(4)(B) is inapplicable to the instant dispute.[10]

Murray argues in the alternative that Kendrick's deposition is prohibited, or at least should be limited, by Rule 45(c)(3)(B)(ii) and (iii). These Rules provide as follows:

---

*National Union,* 967 F.2d at 984 (emphasis in original).

It is highly questionable that Murray's investigation and materials relating to PCB contamination were prepared to prevent a reoccurrence of the accident or for any other nonlitigation purpose. *See Id.* Murray's proximity to the fire while using a cutting torch, as illustrated in part by Jack Murray's affidavit, exposed Murray to a "potential claim" which reasonably could have resulted in litigation. The revelation of extensive PCB contamination as the ostensible result of the fire, however, and the enormous attendant clean-up costs that Murray may have had to bear, resulted in a *well-justified belief* that litigation would result. For instance, the record reveals the cost of remedying the fire damage went from tens of thousands of dollars up to millions of dollars once PCB contamination was discovered. The Court concludes the "driving force" behind the development of the PCB information in documents 7, 23, and 24 was preparation for a claim against Murray based upon PCB contamination resulting from the fire.

8. These are the documents Murray identified in an April 26, 1993, letter to the Court as containing PCB information. Some of the other documents withheld by Murray, however, also appear to contain PCB information. The Court does not address these documents for the following reason.

Murray informed the Court on April 23 that it had been ordered by the Court of Appeals for the Eleventh Circuit to turn over some documents in another proceeding that duplicate some of the withheld documents in this proceeding. Murray stated it would comply with the Eleventh Cir-cuit's order. The Court assumes the additional documents with PCB information are duplicative of those ordered released by the Eleventh Circuit.

9. It appears unlikely that Murray will ever be a party to this action or related subrogation proceedings. Counsel for National Union stated in a hearing before the Magistrate Judge that "[Murray] raises the point of a future subrogation action. There is no future subrogation action. The statute of limitations has run." Tr. of H'rg on Mot. to Quash at 20. Counsel for Murray has admitted as much in a related discovery action in the Northern District of Ohio. *See Arkwright Mutual Ins. Co. v. National Union Fire Insurance Co.,* Misc. No. 92–113, slip op. at 2 (N.D.Ohio Aug. 13, 1992).

10. Murray argues the Fourth Circuit's application in *National Union* of Rule 26(b)(3) to Murray as a non-party necessarily entitles Murray to protection under Rule 26(b)(4). For the reasons set forth in footnote two, the Court is unwilling to analogize the veiled holding in *National Union* to Rule 26(b)(4).

The Advisory Committee comments to Rule 45 governing subpoenas of non-parties is also relevant: "Clause (c)(3)(B)(ii) provides appropriate protection for the intellectual property of the non-party witness; it does not apply to the expert retained by a party, whose information is subject to the provisions of Rule 26(b)(4)." F.R.Civ.P. 45 comment on 1991 amendments. The obvious reverse implication of this comment is that the protection of Rule 26(b)(4) likewise does not extend to unretained non-party expert witnesses.

If a subpoena

. . . . .

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party (iii) . . . the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

Rule 45(c)(3)(B) was added to the Rules of Civil Procedure in late 1991. *See* Fed. R.Civ.P. 45 comment on 1991 amendment. There is little caselaw interpreting 45(c)(3)(B)(ii); the parties have cited no cases supporting their arguments, and the Court has located very little. However, the Advisory Committee, and other commentators, have clearly stated the purpose of Rule 45(c)(3)(B)(ii) as follows:

[C]ompulsion to give evidence *may threaten the intellectual property of experts* denied the opportunity to bargain for the value of their services. . . . Arguably the compulsion to testify can be regarded as *a 'taking' of intellectual property.* The rule establishes the right of such persons to withhold their *expertise* . . . .

F.R.Civ.P. 45 comment on 1991 amendments (emphasis added).[11]

National Union seeks primarily factual information from Mr. Kendrick. For instance, counsel for National Union stated at argument that "[o]nly Mr. Kendrick can answer questions about what he saw, what he smelled, what he did when he was at the fire scene immediately following the fire." Murray has also failed to refute National Union's claim that Mr. Kendrick removed material from the site for testing. Discovery of this purely factual information does not comprise the "intellectual property" of Mr. Kendrick and is therefore not protected by Rule 45(c)(3)(B)(ii).

To the extent any opinion information is even sought, the Court is skeptical as to whether Mr. Kendrick is the type of unretained expert the Rule was designed to protect. First, the protections of 45(c)(3)(B)(ii) and (iii) are committed to the Court's discretion.[12] Second, Murray suggests that Mr. Kendrick and his company were fully compensated at the time they performed their investigation and submitted their report. Given this prior compensation, Mr. Kendrick will not suffer a " 'taking' of intellectual prop-

**11.** *See also* David D. Siegel, *Practice Commentaries*, 28 U.S.C.A. Rules 38–50 § C45–23 (1992) ("Clause (ii) addresses the problem, perceived to be an increasing one, of the attempt to extract expert testimony from a nonparty witness. It applies only to a person not retained as an expert by a party. . . . If such an unretained expert is called, clause (ii) seeks to guard against anything that can amount to an expert opinion from that person if no compensation has been arranged for it"); Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv.L.Rev. 428, 462 (1991) ("Another proposed amendment to Rule 45 [clause (ii)] would give the district judge greater latitude to protect 'the intellectual property of a non-party witness' ").

**12.** The Court's discretion is guided, as stated in the Advisory Committee comments, by the factors discussed in *Kaufman v. Edelstein*, 539 F.2d 811 (2d Cir.1976):

Appropriate factors for consideration . . . would be the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; the difference between testifying to a previously formed or expressed opinion and forming a new one; the possibility that, for other reasons, the witness is a unique expert; the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; [and] the degree to which the witness is able to show that he has been oppressed by having continually to testify. . . .

*Id.* at 822.

As stated above, Mr. Kendrick appears to be subpoenaed primarily on the basis of relevant facts from his investigation. Further, National Union apparently does not seek any new opinions from Mr. Kendrick, but rather opinions he has already formed. Mr. Kendrick is a unique expert in that his near contemporaneous viewing of the fire site and surrounding areas is without parallel in the record. The remaining factors, as well, militate in favor of the Court not exercising its discretion to quash the subpoena of Mr. Kendrick.

erty" by appearing at the noticed deposition and testifying to the opinions he has already formulated at Murray's or its insurance carrier's expense.[13]

Accordingly, Murray's motion to quash National Union's subpoena under Rule 45(c)(3)(B)(ii) and (iii) is **DENIED.**

### III. CONCLUSION

Accordingly, the Court **ADOPTS,** in part, and incorporates herein, the Magistrate Judge's Report–Recommendations. The Court **GRANTS** National Union's renewed motion to compel as to all documents except numbers 7, 23, and 24 and **DENIES** Murray's motion to quash.

---

13. The primary remedy of an unretained expert under Rule 45(c)(3)(B)(ii) to avoid such takings is to allow such experts "the opportunity to bargain for the value of their services." F.R.Civ.P. 45 cmt. on 1991 amendments. The Advisory Committee cites two articles which discuss the primary problem the amended Rule is designed to remedy. *Id.* (citing Virginia G. Maurer, *Compelling the Expert Witness: Fairness and Utility Under the Federal Rules of Civil Procedure,* 19 Ga. L.R. 71 (1984) and Mark Labaton, Note, *Discovery and Testimony of Unretained Experts: Creating a Clear and Equitable Standard to Govern Compliance with Subpoenas,* 1987 Duke L.J. 140).

Mr. Labaton, for instance, argues for reform of the pre-amendment practice of parties subpoena-

ing unretained experts without providing adequate compensation. *See, e.g.,* Labaton, *supra, passim.* Mr. Kendrick and his company have already apparently received adequate compensation for the work performed at the Woodmar Facility. Murray's Reply Br. to Magis.J. at 9 (stating "In addition, Murray seeks *reimbursement* for the cost incurred by Mr. Kendrick in developing his opinion.") (emphasis added). To the extent National Union even seeks any opinion material, *i.e.* intellectual property, from Mr. Kendrick, such appears from the record to be limited only to opinions formed shortly after his examination of the Woodmar facility—opinions, again, for which Mr. Kendrick has already been compensated.