**In re S³ LTD., Debtor.**

**No. 99–22531–S.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Aug. 10, 2000.

358

P. David Richardson, for S³, Ltd.

Michael Cotter, for Management Consulting, Inc.

Robert Van Arsdale, Attorney Assistant to the United States Trustee.

### Memorandum Opinion and Order

STEPHEN C. ST. JOHN, Bankruptcy Judge.

This matter came on for hearing upon the Motion to Compel Discovery filed by Management Consulting, Inc. ("MANCON") against S³ LTD. ("S³"). S³ provoked the controverted discovery by filing a Motion for an Order Partially Lifting Stipulated Protective Order ("Motion to Lift Protective Order") in the above-captioned case. Before the Court announces its findings, a recitation of the procedural background of this case is necessary for an understanding of the present posture of the matters before the Court.

#### Procedural History

S³ filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 12, 1999. MANCON was scheduled as one of

$S^3$'s major creditors. MANCON filed two proofs of claim ("MANCON Claims"): one representing amounts $S^3$ allegedly owed to MANCON for prepetition debts, and a second representing amounts allegedly arising from $S^3$'s rejection of certain subcontracts that $S^3$ entered into with MANCON. Those subcontracts were for performance of certain United States Navy contracts under the Interservice Supply Support Operations Program ("ISSOP Contracts").[1] $S^3$ filed an objection to each of MANCON's claims and counterclaimed against MANCON alleging, among other things, that MANCON was indebted to $S^3$ on account of certain alleged fraud MANCON perpetuated upon $S^3$ while inducing $S^3$ to enter into the subcontracts ("$S^3$ Counterclaim"). MANCON disputed the $S^3$ counterclaim and a hotly contested litigation ensued over the claims and counterclaim.

In the course of the litigation, $S^3$, by counsel, filed with this Court an Application to Employ Litigation Support Professional. The application sought authorization for $S^3$ to employ Derek J. Vander Schaaf ("Vander Schaaf Application") as a government contracts expert. This application recited that, as part of the litigation over the claims and counterclaim, "[a] substantial issue ... includes MANCON's projection of damages pursuant (sic) to its subcontracts with $S^3$ under prime contracts between $S^3$ and the Department of the Navy" and "[i]n order to accurately assess MANCON's damages claim, the attorneys for $S^3$ need to employ an expert in the field of government contracts with the

Department of Defense who will assist them in preparation for trial." (App. to Employ Vander Schaaf at 1.) The application stated that Vander Schaaf was not anticipated to be called to testify at trial. The Court approved the Vander Schaaf Application.

After much rancor, near weekly discovery objection hearings, and mediation by a judge of this Court, $S^3$ and MANCON reached a global settlement which was ultimately incorporated into the Order of Confirmation the Court entered on June 5, 2000, approving $S^3$'s Plan of Reorganization. As a result of confirmation and pursuant to the terms of the Plan, $S^3$ immediately thereafter paid two million dollars ($2,000,000.00) in cash to MANCON and executed a substantial note payable to MANCON to resolve the MANCON Claims and $S^3$ Counterclaim.

During the claims litigation, each party obtained extensive discovery of the other party's respective business records. As a condition of this discovery, the Court entered a protective order conditioning the rights of the litigants concerning use.[2] On June 15, 2000, $S^3$ filed the Motion to Lift Protective Order in this Court, which succinctly prayed for a partial lifting of the Protective Order "to the extent necessary, and only to the extent necessary to allow $S^3$ to disclose to appropriate law enforcement agencies of the United States, through the Department of Defense Voluntary Disclosure Program, certain informa-

---

1. MANCON previously had been the prime contractor for the Navy on the ISSOP Contracts. The eligibility to perform the ISSOP Contracts subsequently changed so that MANCON was ineligible to perform these contracts as the prime contractor. MANCON and $S^3$ agreed to team together to obtain the ISSOP contracts with $S^3$ as the prime contractor. $S^3$ was subsequently awarded the ISSOP Contracts and, after extensive negotiations, retained MANCON as its principal subcontractor.

2. The Protective Order provides, in relevant part:

> [N]either the contents nor the substance of Confidential Material may be disclosed to anyone other than the parties, the law firms who represent the parties, and ... expert consultants who assist the law firm in their analysis of the evidence and presentation of the case. Confidential Materials may be disclosed to individual employees of the parties provided that, prior to disclosure of any Confidential Material to such person, such person shall be informed of this Stipulated Protective Order and agree to be bound by its terms.

(Stipulated Protective Order at ¶ 5.)

tion revealed during discovery in these proceedings."

In its Memorandum in Support of the Motion to Lift Protective Order ("Memorandum"), S[3] alleged that, upon production of certain relevant internal documents relating to the ISSOP contracts, "it became apparent to S[3] management that, not only did MANCON's deception of S[3] contribute to the heavy financial losses that ultimately compelled S[3] to seek protection under Chapter 11, but also that MANCON, without S[3]'s knowledge, apparently had submitted false or fraudulent invoices to be paid by the government under the ISSOP contracts." (Mem. in Support of Mot. to Lift Protective Order at ¶ 2.) S[3] further alleged that these "suspicions" were confirmed by Vander Schaaf, who had advised S[3] "that it appeared that MANCON had been billing the government for materials and vehicles at prices exceeding the 'at cost' price required by the ISSOP Contracts." *Id.* The Memorandum further revealed that S[3]'s Board of Directors authorized and requested Transnational Capital Ventures, Inc. ("Transnational"), the 49% shareholder of S[3], to submit a voluntary disclosure to the Office of Inspector General ("OIG") of the United States Department of Defense on behalf of Transnational and S[3] for the purpose of seeking admission to the OIG's Voluntary Disclosure Program.[3]

On February 2, 2000, Transnational submitted what it styled as an "Initial Voluntary Disclosure" to the OIG ("Disclosure"). The Disclosure, which S[3] attached as an exhibit to its Memorandum in support of its Motion to Lift Protective Order, stated that "[d]uring the course of discovery ... S[3] came upon information which led it to believe that MANCON had defrauded the United States." (Disclosure at 2.) After noting that the Protective Order limited the level of detail that may be provided, the Disclosure stated that:

> Based on its analysis of the available information and an independent analysis by an S[3] consultant (who is a former Deputy Inspector General of the Department of Defense), S[3] has concluded that MANCON ... may have caused S[3] to submit false and fraudulent claims for payment to the United States ... S[3] believes that MANCON submitted such false claims directly to the Government during its incumbency as the ISSOP prime contractor. In particular, S[3] believes that MANCON fraudulently inflated its invoices for materials purchased and vehicles rented for the ISSOP contracts. MANCON may have achieved this either by simply creating phony invoices that showed costs for the items ... or by setting up shell companies that were actually subsidiaries or affiliates of MANCON to provide MANCON with phony invoices which showed inflated prices for materials or rental fees for vehicles which MANCON actually owned and had fully depreciated.

*Id.* at 3. In addition, S[3] advised that, if admitted to the Voluntary Disclosure Program, S[3] would seek relief from the Protective Order to provide detailed information in accordance with the contractual obligations required for admission.

On June 16, 2000, counsel for MANCON promulgated to S[3] interrogatories and a request for production of documents.[4] On

---

**3.** The United States initiated the Voluntary Disclosure Program in 1986 to encourage defense contractors to engage in self-policing to reduce the likelihood of fraud relating to accounting on Department of Defense contracts. In exchange for their disclosures of fraud, the program offered defense contractors certain benefits. *See United States v. Rockwell Int'l Corp.*, 924 F.2d 928 (9th Cir.1991). *See also* United States Department of Justice, United States Attorneys Manual, Chapter 9–42.000 (September 1997).

**4.** MANCON's Interrogatories asked for the name and address of each person who directly or indirectly supplied any information or documents supporting the allegations relating to MANCON in the Disclosure. MANCON requested three categories of documents in its Request for Production of Documents: (1) copies of any document, report or analysis

June 27, 2000, MANCON filed an Objection to the Motion to Lift Protective Order, protesting that S[3] had already violated the Protective Order by submitting the Disclosure and that S[3] needed no further relief from this Court. MANCON claims that S[3]'s stated grounds for lifting the Protective Order are completely unrelated to the claims litigation. MANCON asserts that, consequently, lifting the Protective Order would be unfair to the parties and undermine the integrity of the order, especially given that MANCON was required previously to produce many confidential and propriety documents. MANCON simultaneously filed a Motion for Sanctions ("Sanctions Motion") against the following parties: S[3]; William Casanova ("Casanova"), president and majority shareholder of S[3]; Haim Zitman ("Zitman"), a principal of Transnational; Vander Schaaf; and P. David Richardson ("Richardson"), an attorney affiliated with the law firm of Sidley and Austin and counsel for Transnational.

The Sanctions Motion recites that Casanova, Zitman and Vander Schaaf each signed a required statement permitting access to MANCON's discovery materials. Each party against which MANCON seeks sanctions is alleged to have revealed the contents of the discovery materials to others in violation of the Protective Order. The Sanctions Motion further alleges that S[3], Casanova, Zitman, Vander Schaaf and Richardson took actions in conjunction with the Disclosure Statement's submission in deliberate and reckless disregard of the Protective Order.

S[3] objected to the Interrogatories and Request for Production of Documents on a variety of grounds. First, S[3] stated that the discovery MANCON seeks was not relevant, as there are no factual issues in relation to the Motion to Lift Protective Order. Second, S[3] alleged that the MANCON discovery is interposed for an improper purpose, that is to "compel S[3] to disclose its contentions relating to allegations of fraud by MANCON before such allegations are made in any proceeding." (Obj. to Req. for Produc. of Docs. at 3.) S[3] asserted that being so compelled may impede or chill S[3]'s obligation and right to voluntarily disclose wrongdoing. As to specific requests, S[3] objected to the request seeking any document, report or analysis that Vander Schaaf prepared relating to the Disclosure on the grounds it is protected by the attorney work product doctrine under Rule 7026(b)(3) of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 26(b)(3) of the Federal Rules of Civil Procedure. S[3] objected to MANCON's request for documents supporting the Disclosure's allegations on the basis that it is overly burdensome and further that the documents Vander Schaaf selected to support his report, referred to in this Disclosure ("Vander Schaaf Report"), are also subject to the attorney work product doctrine and thereby protected.

MANCON moved to compel answers to its interrogatories and the production of documents, believing S[3]'s objections to be without merit. At the hearing conducted on the Motion to Compel Discovery, the parties reiterated their positions expounded in their supporting memoranda, with S[3] propounding its belief that no discovery was necessary and reasserting its belief that the Vander Schaaf Report was protected as attorney-client work product[5] and MANCON stating that fundamental fairness required that it be permitted to

---

prepared by Vander Schaaf; (2) copies of any document or correspondence S[3] received from the OIG in response to the Disclosure; and (3) copies of any documents allegedly supporting the allegations made in the Disclosure or Memorandum in Support of the Motion to Lift Protective Order.

5. Despite its representation in the Disclosure that Sidley & Austin, counsel for Transnational, did not represent S[3] at that time, Richardson, who is affiliated with the firm, appeared at the hearing on the Motion to Compel Discovery on S[3]'s behalf and represented to the Court that Sidley & Austin now represents S[3] in all matters relating to the Motion to Lift Protective Order and the Sanctions Motion.

view the source of the accusations in the disclosure. MANCON further indicated that the present pendency of the Sanctions Motion further buttressed their need for discovery in these proceedings.

At the hearing on the Motion to Compel, the Court orally overruled the general objections to MANCON's discovery, reminding the parties that Federal Rule of Bankruptcy Procedure 7026(b), broadly permits discovery "if the information sought appears to be reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Bankr.P. 7026(b)(1).[6] The Court believes that the discovery MANCON has propounded is relevant both to the Motion to Lift Protective Order and the Sanctions Motion, as the information sought therein may enlighten on any number of issues before the Court in these two motions, including the wisdom of permitting the Protective Order's modification and the circumstances and motivations relating to Transnational's making the Disclosure.

The Court also concluded that MANCON did not interpose discovery for an improper purpose, nor was it contrary to public policy to require responses thereto. Accordingly, based upon the Court's ruling, the only remaining issue as to the Motion to Compel is S³'s contention that the Vander Schaaf Report referred to in the Disclosure was protected from discovery under the attorney work product doctrine.[7] S³ requested that the Court conduct an in camera review of the Vander Schaaf Report in order to assist the Court in its determination of the validity of the interposed objection, and the Vander Schaaf Report was subsequently submitted to the Court for determination whether the report was subject to the work-product doctrine.

### Conclusions of Law

■ Discovery of documents is generally governed by Federal Rule of Civil Procedure 26, made applicable in this case by Federal Rule of Bankruptcy Procedure 7026. Pursuant to Rule 26(b)(1), parties may obtain discovery regarding any matter that is not privileged which is relevant to the subject matter involved in the pending action. See Fed.R.Civ.P. 26(b)(1). Rule 26(b)(3) governs which materials are subject to the "work-product doctrine" and are thus privileged from disclosure under Rule 26(b)(1). Pursuant to Rule 26(b)(3), a party may only obtain discovery of documents otherwise discoverable under Rule 26(b)(1) that were prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative, including consultants among others, upon a showing that: (1) the party seeking discovery has substantial need of the materials in the preparation of the party's case; and (2) the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. See Fed.R.Civ.P. 26(b)(3). Rule 26(b)(3) specifically admonishes that the court, "[i]n ordering discovery of such materials when the required showing has been made . . . shall protect against disclosure of the mental impressions, conclusion, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

■ The Fourth Circuit Court of Appeals has provided a framework for evaluating whether documents are protected

---

**6.** Federal Rule of Bankruptcy Procedure 9014 makes Federal Rule of Bankruptcy Procedure 7026 applicable to contested matters such as the Sanctions Motion and the Motion to Lift Protective Order. *See* Fed.R.Bankr.P. 9014.

**7.** The objection to MANCON's request of those documents supporting the allegations made in the Disclosure, including all allegedly phony or inflated invoices as being overly burdensome and requiring the production of

documents already in the possession of MANCON was sustained without reaching the issue of whether they, too are subject to the work product doctrine, subject to a possible reconsideration by the Court as a result of its conduction of an in camera review of the Vander Schaaf Report. Upon review, the Court still believes that such discovery would be unduly burdensome and stands by its previous ruling.

from disclosure under the work product doctrine. In *National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980 (4th Cir.1992), the court stated that Rule 26(b)(3) divides work product into two types: "opinion work product," which is "absolutely immune" from discovery, and "nonopinion work product," which is discoverable upon a showing of substantial need. *See id.* at 983–84. The rationale for the greater protection afforded to opinion work product is the adversary system's dependence "on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and privacy in development of legal theories, opinions, and strategies for the client." *Id.* at 982. *See also Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ("In performing his various duties . . . a lawyer [must] work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, [and] sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.").

■ In resolving the question of whether the work product rule immunizes materials from discovery, the Court must first determine whether the document or tangible things were prepared in anticipation of litigation or for trial. The Court must then must determine whether materials are opinion work product insofar as they involve an attorney or other party representative's mental impressions, conclusions, opinions or legal theories. *See National Union*, 967 F.2d at 984. Materials deemed to be opinion work product are wholly privileged from discovery under the work product doctrine. *See id.* For materials that are determined to be nonopinion work product, these materials may be discoverable if the requesting party has demonstrated a substantial need. *See id.* The requesting party must also show that the

party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *See* Fed. R.Civ.P. 26(b)(3).

■ Before the Court engages in the *National Union* analysis, it must first determine whether Vander Schaaf is a "party representative" for the purposes of Rule 26(b)(3). The Court could not locate any case law as to whom may be considered a party representative under the rule. The rule itself states that consultants, among others, are considered party representatives. In its Application to Employ Vander Schaaf, S³ does not identify him as a "consultant," but rather asserts that he would be a non-testifying expert in the case engaged to assist counsel in preparation for trial. Regardless, the Court believes that, given Vander Schaaf's role in the litigation, he should be considered a consultant in his capacity of assisting the Debtor's counsel in evaluating the validity of the MANCON and S³ claims. As a result, Vander Schaaf is a party representative for the purposes of Rule 26(b)(3).

■ In accordance with *National Union*, the Court must determine whether Vander Schaaf's report was prepared in anticipation of litigation. In order to be prepared in anticipation of litigation, the document must be prepared because of the prospect of litigation when the preparer, or its representative, faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. *See National Union*, 967 F.2d at 984. There is no doubt that, in this case, the report was prepared in anticipation of litigation given that Vander Schaaf was asked to prepare the report to assist in the preparation of the claim's litigation.

■ Next, the Court must determine whether the report constitutes opinion or nonopinion work product. The Court's in camera review of the document leads the Court to believe that a great deal of the document consists of the mental impres-

sions, conclusions, opinions, and legal theories that lead Vander Schaaf to conclude why MANCON's action may have constituted fraud. Consequently, most of the document constitutes opinion work product. The report also contains, however, summaries of the evidence Vander Schaaf utilized upon his review of MANCON's billing documents to support his conclusions and opinions, as well as other technical information regarding Vander Schaaf's qualifications. It is the Court's belief that Vander Schaaf's specific evidentiary findings, as well as his qualifications, constitute nonopinion work product since, even though those parts of the report were also made in anticipation of litigation, they do not contain Vander Schaaf's mental impressions, conclusions, opinions, or legal theories.

 In a situation where a document contains both opinion and nonopinion work product, the Court may redact the portions of the document containing opinion work product and permit discovery of the nonopinion work product upon a showing of substantial need. *See National Union*, 967 F.2d at 985. *See also* Advisory Committee Note to Fed.R. of Civ.P. 26 (stating that, in order to protect the mental impressions and legal theories of attorneys and the subjective evaluations of investigators while at the same time permitting disclosure of discoverable material, "the courts will sometimes find it necessary to order disclosure of a document but with portions deleted"). It would be possible for the Court to follow the Advisory Committee's recommendation and redact the portions of the report that contain Vander Schaaf's mental impressions, conclusions,

opinions or other legal theories and, given the Court's prior ruling that the discovery is relevant under Rule 26(b)(1), the Court would mandate the disclosure of the report, with the portions of the Report constituting opinion work product redacted, provided MANCON could show substantial need for the redacted document and that it could not obtain the information contained in the report elsewhere without undue hardship.

 Rule 26(b)(3)'s requirement for showing substantial need operates as an "anti-freeloader" rule that is designed to prohibit an adverse party "from riding to court on the enterprise of the other [party]." *National Union*, 967 F.2d at 985. As a result, the presumption that the work product privilege applies may be overcome based upon a particular document's relevance and importance to the issues in the litigation and the unavailability of the facts in documents obtainable from other sources. *See id.* at 985.

 The Court believes that there would be a substantial need for MANCON to obtain the report and that MANCON could not obtain the information elsewhere without undue hardship. As the Court has previously found, the particular document is relevant to the dispute at hand because, as with all of the other discovery MANCON has propounded, the information sought therein may enlighten any number of issues before the Court concerning the Motion to Lift Protective Order and the Sanctions Motion. In addition, the Vander Schaaf Report is, on its face, apparently the only complete source of the information contained in the Disclosure regarding Vander Schaaf's findings.[8] Thus, MAN-

---

8. It may be possible that MANCON could obtain some information regarding the Vander Schaaf Report by taking Vander Schaaf's deposition or by issuing him interrogatories in accordance with Rule 26(b)(4)(B). Rule 26(b)(4)(B) provides that a party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of

litigation and who is not expected to be called as a witness at trial upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. *See* Fed.R.Civ.P. 26(b)(4)(B). The Fourth Circuit Court of Appeals has not addressed the interplay between Rule 26(b)(3) and Rule 26(b)(4); the District Court for the Western District of Virginia has suggested,

CON has a demonstrated substantial need for the Vander Schaaf Report, and that it would be an undue hardship for MANCON to obtain the report's contents elsewhere. Therefore, MANCON is entitled to discovery of the report's nonopinion elements, though the other parts of the report would be considered opinion work product and would ordinarily be privileged.

▌ The entire report is disclosable, however, because $S^3$ has waived work product privilege as to the entire document as a result of its disclosure of the report's contents to the Department of Defense. The work-product privilege is designed to balance the needs of the adversary system between an attorney's need to prepare in representing a client and society's general interest in revealing all true and material facts to the resolution of a dispute. *See United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *United States v. Pollard (In re Martin Marietta Corp.)*, 856 F.2d 619, 624 (4th Cir.1988). The work product doctrine is a qualified privilege and is subject to waiver. *See Nobles*, 422 U.S. at 239, 95 S.Ct. 2160; *In re Martin Marietta*, 856 F.2d at 624. One way in which the work-product privilege may be waived is when the party asserting the privilege makes testimonial use of the work product. *See Nobles*, 422 U.S. at 239 n. 14, 95 S.Ct. 2160; *In re Martin Marietta*, 856 F.2d at 624.

In *Martin Marietta*, the Fourth Circuit Court of Appeals found that a party had made testimonial use of documents when they had quoted them in disclosures made to an agency affiliated with the Department of Defense. *See Martin Marietta*, 856 F.2d at 624. Not only did the court find that the party had waived the work-product privilege as to the specific materials quoted, but because the materials were nonopinion work product, that the party had waived the privilege as to all materials "on the same subject matter as that disclosed." *Id.* at 625. The court held, however, that opinion work product did not enjoy a similar subject matter waiver, but in so holding, stated that "actual disclosure of pure mental impressions may be deemed waiver." *Id.* at 626.

▌ In the present case, $S^3$ has waived its privilege with respect to the elements of the report that constitute opinion work product. In its disclosure to the Department of Defense, $S^3$ states that, upon the basis of a consultant's analysis, who $S^3$

however, that even though opinion work product is privileged under Rule 26(b)(3), it may be discoverable pursuant to the limitations found in Rule 26(b)(4). *See Lamonds v. General Motors Corp.*, 180 F.R.D. 302, 305 (W.D.Va.1998) (holding that attorney's privilege on opinion work product is waived when attorney shares work product is with an expert witness).

In cases involving opinion work product, the Court believes that the disclosure of such information pursuant to Rule 26(b)(4) must be narrowly construed in order to protect vigorously opinion work product, as directed by Rule 26(b)(3) and the Fourth Circuit Court of Appeals' decisions regarding opinion work product. Therefore, since Rule 26(b)(4)(B) does not provide for the discovery of documents, the Vander Schaaf Report is not made discoverable under that subsection, even if Vander Schaaf himself is subject to interrogatories and/or deposition under the rule.

Nothing within Rule 26, however, states that a party that is a "consultant" for the purposes of Rule 26(b)(3) may not be also a nontestifying expert employed in anticipation of litigation or preparing for trial. Based on the description of Vander Schaaf's role in the scope of the claims litigation found in $S^3$'s application to employ him, Vander Schaaf fits the definition of a nontestifying expert employed to assist in preparation for trial under Rule 26(b)(4) in addition to being a consultant pursuant to Rule 26(b)(3). Based on the Court's analysis that MANCON has a "substantial need" for the Vander Schaaf Report under Rule 26(b)(3), the Court also believes that a "showing of exceptional circumstances" under Rule 26(b)(4)(B) exists for the same reasons. Thus, even if some or all of the Vander Schaaf Report were not discoverable because of the work-product doctrine, MANCON is not restricted from issuing interrogatories to Vander Schaaf or from deposing him in order to discover facts known or opinions held by the expert in conformity with Rule 26(b)(4)(B).

does not dispute was Vander Schaaf, $S^3$ had concluded that MANCON caused $S^3$ to submit fraudulent claims to the United States. $S^3$ goes on further to state the particular grounds for its opinion, including its belief that MANCON fraudulently inflated its invoices, created phony invoices, or set up phony shell companies.

Based on *In re Martin Marietta,* this statement makes testimonial use of Vander Schaaf's report since it appears, from the Court's in camera inspection, that the allegations contained in the statement are taken almost verbatim from the report. Not only does $S^3$ make the general statement regarding fraud, but also states with particularity the grounds for its belief. Thus, while, in some instances, $S^3$ does not quote from the Vander Schaaf Report exactly, the Disclosure sufficiently paraphrases the report to the point that $S^3$ actually discloses all of the pure mental impressions contained in Vander Schaaf's report. Therefore, $S^3$ has waived the work-product privilege with respect to all of the opinion work product contained in the report.

As for the parts of the report that are nonopinion work product, not only did $S^3$ disclose significant portions of the statements concerning nonopinion work product, thus waiving privilege as to those statements, $S^3$ also waived privilege as to nonopinion work product on the same subject matter as that disclosed. Thus, based upon $S^3$'s disclosure to the DOD, $S^3$ waived the privilege as to the entirety of the Vander Schaaf Report because it actually disclosed all portions of the report that make up opinion work product and waived as to subject matter the entirety of the report that constitute nonopinion work product. Therefore, $S^3$ must disclose the entirety of the Vander Schaaf Report to MANCON.

### Conclusion

MANCON's Motion to Compel with respect to disclosure of the Vander Schaaf Report is GRANTED. It is ORDERED that $S^3$ produce the Vander Schaaf Report to MANCON within ten (10) days of entry of this order.

IT IS SO ORDERED.