STATUTORY COMMITTEE OF
UNSECURED CREDITORS,
Plaintiff,

v.

MOTOROLA, INC., Defendant.

No. 02–MS–414 (RWR/JMF).

United States District Court,
District of Columbia.

Nov. 24, 2003.

Amy C. Andrews, Kirkland & Ellis, Chicago, IL, Jason Beckerman, Kirkland & Ellis, LLP, Washington, DC, for Defendant.

Allan Stuart Hoffman, Washington, DC, for movant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

Currently pending and ready for resolution is Carol Ingley's *Motion to Quash Subpoena in a Civil Case* ("Ingley's Mot."). For the

reasons stated below, Ingley's motion will be granted.

## INTRODUCTION

On July 19, 2001, the Statutory Committee of Unsecured Creditors (the "Committee" or "plaintiff"), on behalf of Iridium Operating LLC, Iridium Capital Corp., Iridium IP LLC, Iridium LLC, Iridium Roaming LLC, and Iridium (Potomac) LLC sued Motorola in United States Bankruptcy Court for the Southern District of New York. *Motorola's Response to Motion of C.A. Ingley & Co. to Quash Subpoena in a Civil Case* ("Motorola's Response") at Exhibit A. The Committee alleges that Motorola, the dominant shareholder and controller of Iridium, created Iridium as a subsidiary in order to insulate itself from liability in the event of Iridium's failure. *Id.* The Committee further alleges that Motorola knew but did not alert investors to the fact that Iridium's market demand was not significant and that, therefore, Iridium's business plan was fundamentally flawed. Motorola's Response at 1. According to the Committee, Motorola withheld this information so that it could utilize Iridium's services for its own gain, regardless of the ultimate effect on Iridium's investors. *Id.* at Exhibit A.

In an attempt to refute the Committee's claims, Motorola now seeks discovery relating to the reasonableness of Iridium's business plans as they existed in the mid–1990's. Toward that end, Motorola initiated a general search for reviews and analyses of Iridium and the mobile satellite communications market. That search led Motorola to various reports prepared by Ingley. It is those reports, as well as Ingley's deposition testimony, that are the subject of the subpoena Ingley now seeks to quash.

## BACKGROUND

Ingley did three copyrighted studies that cost approximately $600,00 to produce. *Supplemental Motion to Support the Motion to Quash Subpoena in a Civil Case* ("Supp. Mot.") at 2. Ingley did not know it, but Motorola had learned that the management of Iridium may have relied upon one or more of Ingley's studies in creating its business plan that is now being attacked by plaintiff as flawed. Ingley, however, was not retained by Iridium to do a study of the demand for mobile satellite telecommunication services and was unaware of Iridium's use of her study until Motorola sought the report.

## DISCUSSION

In a technocratic society, knowledge is an extraordinarily valuable asset, and those who possess knowledge enter the marketplace to sell it to the highest bidder. The market then determines its value, as it determines the value of any commodity. In a society where knowledge is so valuable, there is something unfair about the courts permitting their processes, such as the issuance of a subpoena, to destroy that market in order to take for free the product of an individual's diligence, research, and expertise. Additionally, a technocratic society should not create a means to evade the protection a copyright provides, lest it deter creativity and imagination. The Founding Fathers may have written with quill pens, but they appreciated that the protection of copyrights was crucial "[t]o promote the Progress of Science and useful Arts . . . ." U.S. Const. art I, § 8. Courts should not eviscerate copyright protection simply because someone shows up with a subpoena rather than a checkbook.

It is, therefore, understandable that, in 1999, the Federal Rules of Civil Procedure carved out from the bedrock principle that the law is entitled to every person's evidence an exception for the opinion of or information possessed by a person described as an unretained expert. The exception applies, however, only if that opinion or information does not describe events or occurrences in dispute and results from the expert's study made not at the request of the party. Fed.R.Civ.P. 45(c)(3)(B)(ii). Ingley's studies fit perfectly within the rule. Ingley was unquestionably an expert on the market for mobile satellite telecommunication services. No one is suggesting that the three studies she did were commissioned by any party to this lawsuit. Nevertheless, Motorola would deprive her of the protection of the rule because, according to Motorola, the rule does not pertain to an

expert unless the party is seeking to elicit her present opinion as to some matter in controversy. When, on the other hand, a party seeks only factual information relating to an issue in the case, a witness cannot demand any greater compensation than any other witness merely because he or she can claim some expertise in a discipline or calling.

But, Ingley has absolutely no information about any facts pertaining to the use of her work. Motorola has to concede that Ingley knows nothing about what use, if any, Iridium made of her report. She, therefore, can provide no information whether Iridium relied on her reports and, if so, whether that reliance was reasonable in light of Iridium's business situation. Ingley's only value to Motorola is in the validity of her prediction of the market for mobile satellite telecommunication services. Thus, if her prediction was a rosy one, Iridium's business plan was not flawed, but reasonable. But, a prediction is, by its very nature, an opinion based on the application of one's expertise to the facts one has gathered. Motorola is unquestionably seeking Ingley's opinion as to the market for mobile satellite telecommunication services at certain points in history. If it wasn't, it would not be wasting everyone's time with the subpoena. Motorola's insistence that it is seeking only "factual information" mischaracterizes its own actual desires.[1]

■ Furthermore, Motorola's distinction between a present opinion and a past opinion is unreasonable. Under that distinction, so long as party does not elicit a present, existing opinion as to some matter, the party can compel any other opinion without compensation so long as it can establish that some other person relied upon it. But, ideas have potential value only insofar as other people accept them. As Motorola would have it, a party can demand for free the testimony of any Nobel Laureate in Economics if it can establish that a party relied upon the opinion the Laureate once held, even though not

published, so long as the Laureate is not asked to give what Motorola would call a "present opinion" as to some matter currently in dispute. This would eviscerate Rule 45(c)(3)(B)(ii) by denying its protection to all scholarship other than that which yields a "present" opinion. Yet, pre-existing scholarship falls perfectly within Rule 45(c)(3)(B)(ii)'s protection of an "unretained expert's opinion."

Thus, Motorola's distinction between present and past opinion is unavailing. Ingley's reports and her deposition qualify for the protection provided by Fed.R.Civ.P. 45(c)(3)(B)(ii). Motorola is now obliged to show "substantial need for the testimony or material that cannot be otherwise met without undue hardship." *Id.*

Motorola claims undue hardship, quoting Ingley's supplemental motion that "the studies are no longer for sale." *Motorola's Response to Motion of C.A. Ingley & Co.* at 6. But, on that very same page of Ingley's supplemental motion, Ingley offers to negotiate a price for the report.

■ Moreover, as Ingley points out, she relied upon publicly available information and Motorola can commission reports similar to hers if it wishes to support Iridium's assertion that its projections of future market profits were responsible. Supp. Mot. at 2. Thus, until Motorola negotiates with Ingley or prices a similar report, it is impossible to ascertain whether Motorola is threatened with a substantial hardship. On this record, all we know is that Motorola has been unable to secure Ingley's reports for the cost of copying them. Since Ingley stated that they cost $600,000 to produce and that a similar report might cost $250,000, Ingley's decision not to turn over her reports for the mere cost of reproducing them hardly subjects Motorola to a substantial hardship. Accordingly, Ingley's motion to quash will be granted.

---

1. Note, therefore, how misplaced is Motorola's reliance on *Bank Hapoalim v. American Home Assurance Co.*, 1993 WL 452603 (S.D.N.Y.1993) and *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 148 F.R.D. 552 (S.D.W.Va.1993). In both of these cases, the witnesses had direct knowledge of the fundamental facts of the case; hence, their testimony as to those facts could be compelled without additional compensation. Ingley has no such information about how Iridium used its report.

An Order accompanies this Memorandum Opinion.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is, hereby, **ORDERED** that Carol Ingley's Motion to Quash Subpoena in a Civil Case [#1] is **GRANTED**.

**SO ORDERED**.