*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0289p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

v.

No. 05-5776

PATRICK J. ROXWORTHY, in the capacity of Vice
President, Tax, Yum! Brands, Inc.,

> *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 04-00018—Jennifer B. Coffman, District Judge.

Argued: April 26, 2006

Decided and Filed: August 10, 2006

Before: KEITH and COLE, Circuit Judges; MILLS, District Judge.[*]

---

### COUNSEL

**ARGUED:** Linda T. Coberly, WINSTON & STRAWN, Chicago, Illinois, for Appellant. Frank
P. Cihlar, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:**
Charles S. Cassis, Tanya Y. Bowman, FROST, BROWN, TODD, LLC, Louisville, Kentucky, James
M. Lynch, Louis J. Weber, III, David L. Theyssen, WINSTON & STRAWN, Chicago, Illinois, for
Appellant. Frank P. Cihlar, John Schumann, U.S. DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee.

---

### OPINION

---

R. GUY COLE, JR., Circuit Judge. Defendant Patrick J. Roxworthy, in his capacity as Vice
President of Tax at Yum! Brands, Inc. ("Yum"), appeals the district court's order enforcing an
Internal Revenue Service (IRS) administrative summons demanding production of two memoranda
that Yum argues are protected by work product privilege. For the reasons set forth below, we
reverse the district court's order to compel their production and remand to the district court for entry
of an order granting Roxworthy's motion to quash.

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by
designation.

1

**I.**

The IRS is conducting an investigation of Yum's tax liability for fiscal years 1997, 1998, and 1999. As part of Yum's response to an informal document request, it produced a "privilege log" listing seven documents that it believed were protected from turnover to the IRS by the work product doctrine. The IRS thereupon issued an administrative summons to Roxworthy in his capacity as Vice President of Tax at Yum, seeking production of the seven documents that appeared on the privilege log. Five of the seven documents were ultimately produced to the IRS after the parties entered into a limitation of waiver agreement. The remaining two documents are memoranda prepared by KPMG, LLP, an audit and consulting firm, analyzing the tax consequences of certain transactions entered by Yum pertaining to the creation of a captive insurance company and related stock transfers, including possible arguments that the IRS could mount against Yum's chosen tax treatment of the transactions and possible counter-arguments. The IRS filed a petition in the United States District Court for the Western District of Kentucky to enforce its summons as to the KPMG memoranda. After a show-cause hearing, a magistrate judge entered a report and recommendation that the summons be enforced, concluding that the KPMG memoranda were created not in anticipation of litigation but rather to assist Yum in the preparation of its taxes and yearly audit.

Roxworthy filed objections to the magistrate judge's findings of fact, conclusions of law, and recommendation, and moved to expand the record to include additional affidavits and deposition testimony. The district court granted Roxworthy's motion to expand the record. Roxworthy introduced additional affidavits clarifying that the memoranda at issue were not prepared to assist Yum in the preparation of its taxes, but rather were created because Yum anticipated litigation due to its upcoming recognition of a $112 million loss for tax purposes but not book purposes, the conspicuousness of such a tax treatment, the certainty of an IRS audit due to Yum's size, the unsettled nature of the law in that area, and Yum's belief that the IRS was inclined to litigate such matters. After hearing oral arguments on Roxworthy's objections, the district court adopted the magistrate judge's report and recommendation as the opinion of the court. Roxworthy filed a motion for a stay pending appeal, which the district court denied. Roxworthy filed an emergency motion for a stay pending appeal in this Court, which we granted on July 25, 2005. This appeal follows.

**II.**

**A. Standard of Review**

We review a district court's work product privilege determination for abuse of discretion. *Toledo Edison Co. v. G.A. Techs., Inc.*, 847 F.2d 335, 341 (6th Cir. 1988).[1] The district court abuses its discretion "if it becomes clear that the judge has applied an improper standard, or has failed to follow the established legal rules or has based the decision on a record devoid of facts to support that decision." *Toledo Edison*, 847 F.2d at 341. Although Roxworthy correctly observes that the district

---

[1] Roxworthy argues that de novo review should apply, citing *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 293-94 (6th Cir. 2002), in which we reviewed a claim of attorney-client privilege de novo. Roxworthy takes issue with the concept that a different standard of review could apply to attorney-client privilege claims and work product privilege claims. The discrepancy in standards of review for these two privilege issues exists because, in establishing the abuse-of-discretion standard of review for work product privilege claims, we focused on the fact that privilege issues are discovery-related, and applied the deferential review typically accorded to district court decisions about the scope of discovery, *see Toledo Edison*, 847 F.2d at 841, whereas in establishing the standard of review for attorney-client privilege claims, we focused on whether privilege was a question of law or fact, and, upon concluding it was a question of law, applied de novo review, *see In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 253-54 (6th Cir. 1996). Despite Roxworthy's argument that the discrepancy is inappropriate, we are bound by the earliest existing published precedent on each issue, *see* 6th Cir. R. 36; *Dupont Dow Elastomers, LLC v. NLRB*, 296 F.3d 495, 506 (6th Cir. 2002), and we therefore review work product privilege determinations for abuse of discretion, in accordance with our decision in *Toledo Edison*.

court decided the matter upon the parties' papers and arguments without hearing any testimony evidence, we have recognized that a district court's factual determinations are subject to clear error review even where no live testimony was heard. *See U.S. Steel Corp. v. Fuhrman*, 407 F.2d 1143, 1146 (6th Cir. 1969).

## B.  Meaning of "in anticipation of litigation"

The "work product privilege" was first recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947).  The doctrine's rationale, as originally articulated, was to permit an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests." *Id.* at 511.  The current doctrine, as set forth in Federal Rule of Civil Procedure 26(b)(3), protects from discovery documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative.  A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared "in anticipation of litigation." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006); *Toledo Edison*, 847 F.2d at 339.

We have yet to define "in anticipation of litigation."  Other circuits have adopted the standard first articulated in Wright and Miller's Federal Practice and Procedures, asking whether a document was "prepared or obtained *because of* the prospect of litigation." *United States v. Adlman (Adlman II)*, 134 F.3d 1194, 1202 (2d Cir. 1998); *accord Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992); *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983); *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979).  We have articulated and applied the "because of" standard in our unpublished cases, *see Stampley,* 23 F. App'x at 470; *Arkwright*, 1994 WL 58999, at *3, and district courts from our circuit have also applied this test, *see In re OM Group Sec. Litig.*, 226 F.R.D. 579, 585 (N.D. Ohio 2005); *Guardsmark, Inc. v. Blue Cross & Blue Shield of Tenn.*, 206 F.R.D. 202, 209 (W.D. Tenn. 2002).  Today, we join our sister circuits and adopt the "because of" test as the standard for determining whether documents were prepared "in anticipation of litigation."

Adopting this standard prompts the further question of when documents can be said to have been created because of the prospect of litigation.  It is clear that documents prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes, are not covered by the work product privilege.  Fed. R. Civ. P. 26(b)(3) advisory committee's notes (1970); *Nat'l Union*, 967 F.2d at 984; *In re Sealed Case*, 146 F.3d 881, 888 (D.C. Cir. 1998).  Thus, a document will not be protected if it would have been prepared in substantially the same manner irrespective of the anticipated litigation. *Adlman II*, 134 F.3d at 1205.  Furthermore, courts applying the "because of" test have typically recognized both a subjective and objective element to the inquiry; that is, a party must "have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re Sealed Case*, 146 F.3d at 884; *see also Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (requiring anticipation to be objectively reasonable); *Nat'l Union*, 967 F.2d at 984 (same); *Guardsmark*, 206 F.R.D. at 20–10 (following *In re Sealed Case*).  We therefore embrace the test used by a number of the district courts in our circuit, including the district court in this case, which asks (1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable. *See, e.g., In re OM Group Sec. Litig.*, 226 F.R.D. at 584–85; *Guardsmark*, 206 F.R.D. at 209–10.

## C.  Subjective anticipation of litigation

The two memoranda at issue here were made available to us for *in camera* review.  The documents appear to be two versions of the same memorandum.  Both are dated March 29, 2000, and are addressed from KPMG to Matthew M. Preston, identifying him as the Corporate Counsel of Tricon Global Restaurants, Inc. ("Tricon"), which was Yum's predecessor company.  The memoranda are similar in content but differ in length:  One is fifty-eight pages, and the other is twenty-four pages.  Both bear a designation of attorney-client privilege but do not bear any work-product designation.

Yum argues that the documents themselves are the best evidence that they were created in anticipation of litigation.  Indeed, apart from eleven pages of background facts regarding Tricon's creation of a captive insurance company and subsequent transfer of stock, both of which occurred prior to the memoranda's completion, the memoranda contain dense legal analysis of current tax law, including arguments and counter-arguments in certain areas of law that the memoranda argue are unsettled.  The "Conclusions" portion of each memo states that "it is more likely than not . . . that the following federal tax consequences (among others) will result from the transactions described herein and that such consequences will be supported by 'substantial authority' within the meaning of Treas. Reg. § 1.6662-4(d)."  The "Conclusions" that follow include statements about the tax treatment of the "Premium Payment" and "Loss Payment," calculation of the basis of Tricon's stock, and the proper recognition of taxable income and capital loss resulting from the transaction.  The "Discussion" section of each memo sets forth "the rationale for [KPMG's] conclusions and some of the more likely theories that could be asserted by the IRS in challenging [KPMG's] conclusions."  The Discussion section in each of the memoranda expresses legal conclusions throughout, using language such as the following:  "[W]e believe that it is likely that a court would agree with . . . "; "it would seem that unless [certain events occur], this issue . . . may not be contested"; "we believe that it is more likely than not that a court would agree that . . . "; "it appears reasonable to rely on . . . "; "[a]lthough not free from doubt, we believe that [the hypothetical argument] would be rejected by a court"; and "[i]t is possible that the application of [certain tax rules] could be raised . . . ."

As in *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987), the KPMG memoranda "advise the [withholding party] of the types of legal challenges likely to be mounted . . . , potential defenses available . . . , and the likely outcome."  In upholding the asserted work-product protection, the court in *Delaney* noted that the requesting party sought the "attorneys' assessment of the program's legal vulnerabilities in order to make sure it does not miss anything in crafting its legal case," which was "precisely the type of discovery the Court refused to permit in *Hickman v. Taylor*."  *Id.*  So too here, the IRS would appear to obtain an unfair advantage by gaining access to KPMG's detailed legal analysis of the strengths and weaknesses of Yum's position.  This factor weighs in favor of recognizing the documents as privileged.

Nevertheless, the key issue in determining whether a document should be withheld is the function that the document serves.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 858 (D.C. Cir. 1980).  Because documents are not protected if they were created for nonlitigation purposes, regardless of content, "[d]etermining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question."  *Nat'l Union*, 967 F.2d at 984.  Thus we must examine not only the documents themselves, but the circumstances surrounding the documents' creation.

The original affidavits available to the magistrate judge contained for the most part conclusory assertions that the documents were created in anticipation of litigation.  For instance, Matthew M. Preston, the Vice President, Associate General Counsel, and Assistant Secretary of Yum (and addressee of the KPMG memoranda), asserted that "it was anticipated that there would

be a tax controversy, including potential litigation, between the Company and the Internal Revenue Service," that he sought opinion letters from KPMG "in anticipation of litigation with the IRS," and that he "would not have obtained the opinion letters from KPMG but for the anticipation of federal income tax controversy proceedings, including litigation, between [Yum] and the IRS." Joint Appendix ("J.A.") at 110–11 (Preston Aff. June 28, 2004, ¶¶ 8–9, 11). Greg Engel, a partner at KPMG, provided an affidavit substantially similar to Preston's. *See* J.A. 114 (Engel Aff. June 24, 2004, ¶¶ 6–7).

The magistrate judge concluded that Yum's "bare, conclusory affidavit allegations" failed to show it "had a subjective belief that litigation was a real possibility" at the time the memoranda were completed. J.A. 45–47 (Report and Recommendation at 15–17). The magistrate judge further concluded that the memoranda were more likely prepared to assist Yum in the preparation of its taxes and the avoidance of understatement penalties if the IRS disagreed with Yum's tax treatment, and therefore concluded that the documents were part of the regular course of business and would have been created irrespective of any potential for litigation. J.A. 44–45 (Report and Recommendation at 14–15). The district court adopted these findings when it adopted the magistrate judge's report and recommendation as the opinion of the court. J.A. 55 (Dist. Ct. Order at 6).

The parties disagree as to the primary rationale underlying the district court's determination that Yum has not satisfied its burden of demonstrating subjective anticipation of litigation. The IRS argues that the magistrate judge's report and recommendation and the district court's opinion rest on Yum's simple failure to fulfill its burden of coming forth with evidence that the documents were created in anticipation of litigation. Yum, on the other hand, stresses that the magistrate judge improperly determined that the memoranda could not be privileged if created in part to assist in an audit, and argues that the district court's adoption of this conclusion constitutes an error of law. We need not determine which of these two rationales of the magistrate judge's report and recommendation forms the primary basis of the district court's conclusion that Yum's memoranda are not privileged, because we conclude that the district court's adoption of either of these grounds constitutes an abuse of discretion.

The magistrate judge concluded that Yum failed to provide adequate proof that the two documents were prepared because of the prospect of litigation, and surmised that the more likely use of the documents was to "buttress[] [Yum's] federal income tax return to the IRS should the IRS assess penalties for a substantial understatement," and that the documents were therefore created irrespective of the potential for litigation. J.A. 44–45 (Report and Recommendation at 14-15). In reaching this conclusion, the magistrate judge placed particular emphasis on the "dubious time sequence" of the transaction's closing prior to Yum obtaining the memoranda, and the coinciding of the memoranda's completion with the March 15 deadline for corporate tax filings. J.A. 47–48 (Report and Recommendation at 17–18). The magistrate judge also inferred from the record that Preston, the individual who had requested the report, was "the company's tax lawyer, not an in-house or law firm litigation counsel." *Id.* The magistrate judge concluded that "Yum ha[d] not provided proof to contravene the obvious inference that the opinions were provided in connection with KPMG's regular responsibilities in the preparation of the corporate tax return due immediately after the opinions were rendered." *Id.*

After the district court granted Yum's motion to expand the record, Yum introduced affidavits clarifying that Yum did not file its taxes on March 15 but rather received a six-month extension every year, J.A. 246 (Roxworthy Aff. Oct. 14, 2004, ¶ 6); J.A. 243 (Preston Aff. Oct. 18, 2004, ¶ 5), that the March 15 tax deadline was of no significance to Yum, *id.*, that Preston's duties were those of a general in-house counsel and not primarily those of a tax attorney, J.A. 243–44 (Preston Aff. Oct. 18, 2004, ¶ 6), that Roxworthy and other members of the tax department prepare Yum's tax returns in-house, J.A. 246 (Roxworthy Aff. Oct. 14, 2004, ¶ 4), that KPMG has never

played any part in Yum's tax return preparation, J.A. 246 (Roxworthy Aff. Oct. 14, 2004, ¶ 5), that this was "the first and only time that . . . anyone in Yum's legal department sought a written opinion from KPMG on a U.S. federal tax issue," J.A. 243 (Preston Aff. Oct. 18, 2004, ¶ 3), and that the memoranda at issue were not prepared to assist in the preparation of tax returns, J.A. 243 (Preston Aff. Oct. 18, 2004, ¶ 5); J.A. 246 (Roxworthy Aff. Oct. 14, 2004, ¶ 6).

The additional affidavits also provided further details explaining why, exactly, Yum anticipated litigation. Specifically, Preston stated that Engel advised him that "the tax treatment of captive insurance companies, including the treatment of premium payments to captive insurance companies, was very unsettled and had been the subject of considerable litigation between the Internal Revenue Service . . . and other large corporate taxpayers like Yum." J.A. 242 (Preston Aff. Oct. 18, 2004, ¶ 2). He also stated that he expected litigation concerning a $112 million loss recognized by Yum in connection with the transaction, because the loss was recognized for tax purposes but not book purposes and because he "was informed that the IRS had a history of attacking transactions and litigating cases where a loss was only recognized for tax purposes." J.A. 243 (Preston Aff. Oct. 18, 2004, ¶¶ 3–4). While the original record may have left doubts regarding whether Yum subjectively believed litigation was likely, and whether Yum commissioned the KPMG memoranda because of that belief or merely to assist with a business purpose, the affidavits introduced to expand the record clarify these questions.

We have stated that a party may satisfy its burden of showing anticipation of litigation "in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories," and that the showing "can be opposed or controverted in the same manner." *Toledo Edison*, 847 F.2d at 339. *See also Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 473 (S.D.N.Y. 1993) ("In requiring a party to prove the factual basis for its claims of privilege, the courts generally look to a showing based on affidavits or equivalent statements that address each document at issue."). Where an "undisputed affidavit . . . is specific and detailed to indicate that the documents were prepared in anticipation of litigation or trial," then the party claiming work product protection has met its burden. *Toledo Edison*, 847 F.2d at 341. However, application of the privilege will be rejected where the "only basis" for the claim is an affidavit containing "conclusory statement[s]." *Guardsmark*, 206 F.R.D. at 210; *accord Bowne*, 150 F.R.D. at 474; *Senate of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987) (rejecting party's "bare assertion" that documents were withheld in anticipation of litigation where facts of case raised "enough questions as to its accuracy to render it insufficient as a matter of law").

We find no evidence in the record to controvert the affidavits supplied by Yum. Although the memoranda do not bear a work-product designation, we agree with the magistrate judge's observation that the absence of a designation alone does not settle the inquiry of whether the documents were created in anticipation of litigation. Although Yum's supplemental affidavits do not clarify why the memoranda were not submitted until after the transactions were complete, we find error in the magistrate judge's speculation that the timing decreases the likelihood that the memoranda were completed in anticipation of litigation. The company's decision to obtain a legal opinion only after it had completed a series of transactions could easily lead to the conclusion that the opinion was *more* likely to be in anticipation of litigation as opposed to being used for ordinary business purposes. Yum's uncontroverted assertions that it anticipated litigation because of the uncertainty surrounding the area of tax law at issue are also corroborated by the memoranda's highly detailed discussions of hypothetical legal arguments. Finally, the additional specifics regarding why Yum anticipated litigation, particularly its explanation that it planned to claim a $112 million tax loss with no corresponding book loss, that KPMG had advised the company that the law surrounding captive insurance companies was unsettled, and that the IRS had demonstrated an inclination to litigate in that area, provide more than bare self-serving conclusions. Thus, Yum's unambiguous sworn affidavits and deposition testimony satisfy its burden of demonstrating that the memoranda

were prepared due to Yum's subjective anticipation of litigation and not in the ordinary course of business.

The district court ultimately adopted the magistrate judge's report and recommendation even in light of new evidence that contradicted the magistrate judge's findings of fact. For example, even though the magistrate judge's conclusions were based in part on the assumption that Preston's responsibilities at Yum were those of a tax lawyer and not a litigation counselor, the district court states without explanation that "the fact that Mr. Preston's duties include substantially more than those of the company's tax attorney does not alter the Magistrate Judge's holding." J.A. 51–52 (Dist. Ct. Order at 2–3). Furthermore, the magistrate judge's conclusions assumed that KPMG assisted Yum in the preparation of its tax returns; while the district court acknowledges, based upon Yum's additional evidence, that "KPMG apparently does not prepare the actual tax forms," the district court concludes that "its services are used to some extent, providing a sufficient basis for the Magistrate Judge's opinion," J.A. 52 (Dist. Ct. Order at 3), despite Roxworthy's assertion in his affidavit that "KPMG has never had a role in preparing or assisting in the preparation of Yum's federal income tax return," J.A. 246 (Roxworthy Aff. Oct. 14, 2004, ¶ 5). In addition, the magistrate judge's conclusions were based in part upon the observation that the timing of KPMG's memoranda coincided with the March 15 deadline for corporate returns, yet in spite of Yum's uncontroverted assertion that the March 15 deadline was of no significance to Yum because it files its returns in September every year, the district court concludes that this "does not alter . . . the Magistrate Judge's conclusions." J.A. 53 (Dist. Ct. Order at 4).

To the extent that the magistrate judge's opinion rests on Yum's failure to put forth specific credible evidence, we conclude that the district court's adoption of these findings, after additional evidence contradicting the magistrate judge's conclusions had been submitted, constituted clear error. In the absence of any evidence to the contrary, the affidavits and deposition testimony supplied by Yum are adequate to demonstrate that Yum did not commission the memoranda as part of the ordinary course of business of completing the transactions and that Yum in fact anticipated litigation because of the certainty of an IRS audit, the conspicuousness of the $112 million discrepancy between tax and book loss, and the unsettled law surrounding captive insurance company transactions.

Yum focuses on the magistrate judge's discussion of the possible use of the KPMG memoranda in Yum's audit process, and argues that the magistrate judge erroneously assumed that use of the memoranda for such a purpose precludes assertion of a work-product privilege. As the magistrate judge's report and recommendation and the IRS's brief both note, the tax code imposes a twenty percent penalty on substantial understatements of income tax. I.R.C. §§ 6662(a)–(b). This penalty typically does not apply, however, to an item that was adequately disclosed on one's tax return if substantial authority supports the chosen tax treatment. *Id.* § 6662(d)(2)(B); Treas. Reg. § 1.6662-4(d)(2). Thus, the KPMG memoranda's references to "substantial authority" and citation to Treasury Regulation 1.6662-4(d)(2) suggest that the arguments supplied were expected to be used by Yum in articulating its tax-treatment rationale to the IRS during an audit in order to avoid a penalty.

We are persuaded by Yum's argument that even if the KPMG memoranda were prepared in part to assist Yum in avoiding underpayment penalties during an audit, the documents do not lose their work product privilege "merely because [they were] created in order to assist with a business decision," unless the documents "would have been created in essentially similar form irrespective of the litigation." *Adlman II*, 134 F.3d at 1202; *see also State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 68-70 (1st Cir. 2002) (adopting *Adlman II*'s allowance for dual purpose and rejection of "primary purpose" requirement); *Guardsmark,* 206 F.R.D. at 209 (same); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1082 (N.D. Cal. 2002) ("[E]xcept where a document would have been generated in the normal course of business even if no litigation was anticipated,

the work product doctrine can reach documents prepared 'because of litigation' even if they were prepared in connection with a business transaction or also served a business purpose."). As other courts have noted, a document can be created for both use in the ordinary course of business and in anticipation of litigation without losing its work-product privilege. To the extent that the magistrate judge's findings turned on a requirement that the primary or sole purpose of the KPMG memoranda be in preparation of litigation, we conclude that the magistrate judge relied upon an incorrect interpretation of the law.

Yum further argues that the magistrate judge erred in concluding that anticipation of an audit does not constitute anticipation of litigation under Rule 26(b)(3). *See* J.A. 43 (Report and Recommendation at 13). The magistrate judge's observation that mere anticipation of an audit does not suffice, however, was made in the context of concluding that the submitted affidavits and KPMG memoranda did not evidence a subjective anticipation of litigation. Because we reverse the district court's determination that Yum has not adequately demonstrated subjective anticipation of litigation, we need not decide when, if ever, subjective anticipation of an audit may suffice to constitute subjective anticipation of litigation.

Because the magistrate judge's conclusion is unsupported by both the record and the law, we conclude that the district court committed clear error in adopting the magistrate judge's conclusion that Yum has not demonstrated subjective anticipation of litigation.

## D.  Objectively reasonable anticipation of litigation

The magistrate judge further concluded that Yum had failed to show "particular facts that would reasonably give rise" to a belief that "litigation was a real possibility." J.A. 46 (Report and Recommendation at 16). The district court adopted the magistrate judge's conclusion, noting that "any posibility of litigation was too far removed to be concrete or significant." J.A. 54 (Dist. Ct. Order at 5).

Courts have articulated various tests for determining when anticipation of litigation is too speculative to be objectively reasonable. The D.C. Circuit has required the objecting party to prove that a document was "prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind," *Coastal States*, 617 F.2d at 865, but has also found the privilege to apply in the absence of a specific claim where an attorney "rendered legal advice in order to protect the client from future litigation about a particular transaction," *In re Sealed Case*, 146 F.3d at 885 (recognizing privilege attached to documents that were created after public stir surrounding transaction but two years before formal investigation began). *See also Delaney*, 826 F.2d at 127 (finding that privilege applied to memorandum discussing possible legal challenges to IRS's proposed statistical sampling program even though no litigation was pending and program had yet to be implemented). The Fourth Circuit has stated that the protection only applies when the "preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union*, 967 F.2d at 984. Although not every audit is potentially the subject of litigation, *see Coastal States*, 617 F.2d at 865, a document prepared "in anticipation of 'dealing with the IRS' . . . may well have been prepared in anticipation of an administrative dispute and this may constitute 'litigation' within the meaning of Rule 26," *Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 719–22 (5th Cir. 1985).

Here, Yum argues that it anticipated litigation because a yearly IRS audit of Yum was a certainty due to the company's size, the transaction at issue involved a $112 million discrepancy between tax loss and book loss, and the company had been advised by KPMG that the area of law was unsettled and that the IRS had recently targeted this type of transaction. Yum points to a case with analogous facts in which a district court upheld the work-product privilege. In *ChevronTexaco*, 241 F. Supp. 2d at 1082, as here, the company's tax returns were routinely examined by the IRS, the

company was engaged in a transaction involving "a very substantial amount of tax dollars," and the IRS "had previously questioned similar transactions." The court concluded that the withholding party "reasonably believed that it was a virtual certainty that the IRS would challenge the . . . transaction." *Id*.

Likewise, in *United States v. Adlman*, 68 F.3d 1495, 1496 (2d Cir. 1995) (*Adlman I*), an accounting firm prepared documents evaluating the tax consequences and likely IRS challenges to a company's proposed reorganization in which the company would claim a capital loss of $290 million. The Second Circuit held that the district court erred in concluding that the prospect of litigation was too remote for work-product privilege to apply, observing that "[i]n many instances, the expected litigation is quite concrete, notwithstanding that the events giving rise to it have not yet occurred." *Id.* at 1501. The court remanded the matter for the district court to apply the proper standard.

We find these factually analogous cases persuasive. As contemplated by *Adlman I*, Yum has demonstrated that the "expected litigation" here is "quite concrete" despite the absence of any overt indication from the IRS that it intends to pursue litigation against Yum. Yum has identified a specific transaction that could precipitate litigation, the specific legal controversy that would be at issue in the litigation, the opposing party's opportunity to discover the facts that would give rise to the litigation, and the opposing party's general inclination to pursue this sort of litigation. We believe that Yum has established that the memoranda at issue sought to protect Yum "from future litigation about a particular transaction," *see In re Sealed Case*, 146 F.3d at 885, that Yum has also established that KPMG and Yum had in mind a "specific claim supported by concrete facts which would likely lead to litigation," *see Coastal States*, 617 F.2d at 865, and that Yum has established that it "face[d] an actual or a potential claim following an actual event or series of events that reasonably could result in litigation," *Nat'l Union*, 967 F.2d at 984. Because we believe that Yum's circumstances clearly constitute objectively reasonable anticipation of litigation under any of the tests we have seen employed by our sister circuits, we need not decide which of these articulations is most useful.

We therefore conclude that the district court committed an error of law in determining that Yum's anticipation of litigation was too remote to constitute a reasonable anticipation of litigation.

### III.

For the reasons set forth above, we REVERSE the district court's order granting the IRS's Petition to Enforce the Internal Revenue Summons and we REMAND with instructions to the district court to grant Roxworthy's Motion to Quash.