**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILED**
**MAY 31, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CHRISTOPHER DENNEY, | ) | No. 36720-7-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| CITY OF RICHLAND, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — Work product documents are exempt from disclosure under the

Public Records Act (PRA), chapter 42.56 RCW. A document can be entitled to work

product protection if it was prepared in anticipation of litigation, even if the document

also served a nonlitigation purpose. But protection in such dual-purpose circumstances

is not automatic. Public agencies cannot shield ordinary business records from disclosure

by simply claiming some sort of litigation purpose.

A two-step analysis applies to discerning whether a purported dual-purpose

document qualifies for work product protection. First, we must assess whether the

document was truly created because of the anticipation of litigation. This requires both

a subjective and objective inquiry. Second, we analyze whether the document would

No. 36720-7-III
*Denney v. City of Richland*

have been prepared in substantially the same form but for the prospect of litigation.

If a document genuinely was created because of litigation and would not have been

created in substantially the same form but for litigation, then the document qualifies

for work product protection.

The City of Richland (City) denied Christopher Denney's PRA request seeking

two workplace investigation reports, asserting the reports constituted work product.

While the documents were generated pursuant to City policy, they were also created

with an eye toward anticipated litigation. The record reveals that the City's concerns

about litigation were both subjectively valid and objectively reasonable. Furthermore,

the City's two reports would not have been generated in substantially the same form but

for the anticipation of litigation. The reports are therefore protected from PRA disclosure

as attorney work product. The trial court's summary judgment dismissal of Mr. Denney's

PRA complaint is affirmed.

## FACTUAL BACKGROUND

On April 28, 2016, City firefighter Christopher Denney made an oral complaint

of discrimination and harassment to his supervisor, Captain Adam Hardgrove. Captain

Hardgrove prepared a memorandum documenting the complaint and e-mailed it to the

City's human resources (HR) director, Allison Jubb, the next day. In a second e-mail to

2

No. 36720-7-III
*Denney v. City of Richland*

Ms. Jubb, Captain Hardgrove confirmed that he advised Mr. Denney to follow up and submit his formal complaint in writing to HR. Ms. Jubb forwarded the memorandum to City attorney Heather Kintzley the same day she received it. In the memorandum, Captain Hardgrove indicated that Mr. Denney said he was proceeding with a formal complaint on the advice of his attorney.[1] Captain Hardgrove also noted in the memorandum that Mr. Denney had expressed distrust of the City's HR department, and had doubts the City would conduct a fair and independent investigation of his complaint.

The City has a policy with the stated goal of "ensuring its employees are able to enjoy a work environment free from discrimination and all forms of unlawful harassment." Clerk's Papers (CP) at 15. The policy prohibits discrimination and unlawful harassment on the basis of a legally protected status including, but not limited to, sex, race, religion, marital status, veteran status, age, national origin, sexual orientation, color, creed, ancestry, and disability. All City employees are expected to comply with the terms of the policy and report "any observed discrimination and/or harassment." *Id*. at 16. The policy provides that "[h]arassment complaints should be in writing, and list the name(s) of the individual(s) involved, date(s), location(s), witness(es), a description of the

---

[1] Mr. Denney denies that he told Captain Hardgrove he had even spoken to an attorney. Nevertheless, it is undisputed that Captain Hardgrove reported Mr. Denney had made reference to an attorney.

No. 36720-7-III
*Denney v. City of Richland*

incident(s) or action(s) in question, and any other pertinent information. The written statement shall be signed and dated by the complainant." *Id*. at 17. HR is the designated recipient of discrimination and harassment complaints and is responsible for facilitating appropriate investigation and resolution. According to the policy, any "competent individual, including an outside investigator," may conduct the investigation. *Id*.

Captain Hardgrove noted in his memorandum that he provided Mr. Denney with a copy of the City's policy at the time Mr. Denney voiced his complaint on April 28. Mr. Denney does not deny being aware of the City's policy.

The nature of HR's resolution of past complaints has varied. Some investigations are conducted by an employee's supervisor, some by the HR department or third parties retained by the HR department, and some by the City's attorney or third parties retained by the City's attorney. In workplace complaints where only remedial action is contemplated and litigation is not anticipated, the City attorney's office is rarely involved in the resolution process. In those ordinary circumstances, an investigative report created under the policy would qualify as a public record, available for disclosure, even if the City attorney's office had some involvement with the investigation process.

After Ms. Jubb received Captain Hardgrove's memorandum, she determined there was insufficient factual information to enable HR to make an informed decision as

4

No. 36720-7-III
*Denney v. City of Richland*

to the nature of the claim and scope of investigation. Consistent with the terms of the City's policy, HR requested Mr. Denney provide a detailed written statement about his complaint. Mr. Denney did not comply with this request.

City attorney Heather Kintzley then requested Mr. Denney provide a written complaint and statement to the City attorney's office. On May 9, Mr. Denney indicated he was working on such a statement and hoped to have it completed by May 11. However, on May 12 Mr. Denney sent an e-mail to Ms. Kintzley indicating he felt Ms. Kintzley's position as City attorney was "adversarial by definition [to him] since [Ms. Kintzley] represent[ed] the city's interest." *Id*. at 200. Mr. Denney stated he would not provide any statement until after he met with a union representative and "possibly [his] attorney and we know who'll be investigating this matter and that they will be fair and impartial." *Id*. Ms. Kintzley replied in an e-mail on the same date:

> [P]lease let me clarify that I represent the City as a legal entity, not any particular individual within the organization. Therefore, if I were to ascertain through investigation that an individual in the organization were engaged in unlawful conduct, my legal and ethical obligation to the City as an organization, and to the City Council as the organization's duly-authorized constituents, would compel me to take action, no matter who that person is. Although you may perceive my position as legal adviser to mean that my interests are adverse to yours, they are not.

*Id*.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 36720-7-III
*Denney v. City of Richland*

By mid-May, Ms. Kintzley concluded Mr. Denney was preparing for litigation against the City. As a former HR director for the city of Kennewick, Ms. Kintzley found Mr. Denney's resistance to providing information was not typical of most complainants who are looking to remedy an ordinary workplace concern. She believed Mr. Denney's behavior to be consistent with complainants she had previously encountered who went on to file EEOC (Equal Employment Opportunity Commission) complaints, demand arbitration, and in one instance file a lawsuit. Ms. Kintzley was also aware the City was preparing for arbitration in a union grievance, filed by Mr. Denney the previous year, that touched on some of the same issues of discrimination and harassment that Mr. Denney recounted to Captain Hardgrove.

On May 25, Mr. Denney and HR director Jubb met to discuss Mr. Denney's concerns about the fairness of an internal investigation by the City. During this meeting, they discussed the City's policy and procedure concerning discrimination and harassment complaints. On June 22, Mr. Denney provided Ms. Jubb with a single-page, signed statement:

> This statement is meant to be a brief overview and not a detailed account of the harassment, discrimination and retaliation that I have been exposed to at Richland Fire & EMS [emergency medical services] for nearly four years. The primary individuals that have taken these actions against me include but is not limited to the following: James Hempstead, Tom Huntington, and Curt Walsh, and various individuals working on their behalf. These

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

individuals have targeted me and continually have held me to different standards than other individuals and to make an example out of me. They've consistently engaged in a pattern of dishonesty and deceit when having conversations about my performance, any concerns they had about promoting me, and any internal investigations concerning me. They've certain[ly] have not lived up to the City's Core Value of Integrity. Furthermore, when I have voiced my concerns about being harassed they ignored them and been dismissive many times. I have further been shunned and retaliated against for my grievance regarding my promotion pass over and, most recently, my public records request. What little information I received from the city via my public records request corroborates this. Also, I have documentation and witness accounts to support these claims. Lastly, I would like to reiterate my trepidations about the city conducting an investigation internally into this matter and that they will be fair and impartial. My apprehensions stem from the many entangling personal and professional relationships between [the] ELT [executive leadership team] and the fire department and also from the defensive and retaliatory posture that the city is already displaying.

*Id*. at 181. Contrary to the requirements of the City's policy, Mr. Denney's statement did not "list the name(s) of the individual(s) involved, date(s), location(s), witness(es), a description of the incident(s) or action(s) in question, and any other pertinent information" that would allow HR to differentiate discrimination and unlawful harassment from typical issues of employee discontent. *Id*. at 17. Mr. Denney's statement also failed to specify the type of protected status (sex, age, religion, etc.) at issue in his complaint.

Two days after receiving Mr. Denney's written statement, Ms. Jubb met again with Mr. Denney to try to obtain further information about his complaint. It was around this

No. 36720-7-III
*Denney v. City of Richland*

time that Ms. Jubb came to believe that further investigation of Mr. Denney's complaint

should be directed through the City attorney's office.

On July 22, City attorney Heather Kintzley engaged Diversified HR Consulting,

LLP (Diversified) to investigate Mr. Denney's complaint. Ms. Kintzley retained

Diversified "to determine the veracity of Mr. Denney's claims in order to facilitate [her]

analysis of the City's potential liability exposure in an anticipated lawsuit, and to enable

[her] to provide timely and accurate legal advice to the City." *Id*. at 188. A confidentiality

clause in the letter of engagement between Diversified and the City stated:

> The investigation performed by [Diversified] will be conducted at the
> behest and direction of Richland City Attorney Heather Kintzley, and is
> intended for the purpose of potential litigation. All communication related
> to the services contemplated herein shall be directed to the City Attorney.
> [Diversified] will mark all documents transmitted to the City Attorney as
> "Attorney Work Product" and "Do Not Disclose."

*Id*. at 203. Ms. Kintzley later declared she would not have retained Diversified but for

what she perceived to be an imminent threat of litigation by Mr. Denney against the City.

In addition to the primary legal risk assessment purpose of the investigation, Ms. Kintzley

testified the investigation had a secondary purpose of fulfilling the City's responsibility

under the policy to thoroughly and promptly investigate complaints and take any

appropriate corrective action. From these facts, the City would later assert the report

No. 36720-7-III
*Denney v. City of Richland*

from Diversified would not have been created in substantially the same form but for the perceived threat of litigation.

Diversified's investigators interviewed Mr. Denney on August 9. Mr. Denney brought a former City firefighter, Ricky Walsh, to the interview. According to Ms. Kintzley, Mr. Walsh told the investigators that the process was likely to result in legal action, and asked whether Mr. Denney could call the investigators as witnesses at trial.[2]

On October 13, Diversified provided a final report of its investigation to City attorney Kintzley. Ms. Kintzley provided Mr. Denney a summary of the report's findings on October 21. She described the report itself as "attorney work product . . . not subject to disclosure." *Id*. at 75. The report[3] itself is captioned as work product, prepared at the direction of the City attorney for purposes of anticipated litigation. The report contains extensive summaries of Diversified's interviews with individuals involved in Mr. Denney's complaint. The report also contains Diversified's analysis

---

[2] Mr. Walsh disputes that he made a statement regarding legal action. We note that by the time of Mr. Walsh's alleged statement, Ms. Kintzley had already retained Diversified and asked Diversified to designate any documents generated by Diversified for the City as attorney work product.

[3] At the time of the trial court's summary judgment proceedings, the report was filed under seal for in camera review. The report is also part of the sealed record on review.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 36720-7-III
*Denney v. City of Richland*

of Mr. Denney's allegations of discrimination, unlawful harassment, and a hostile work environment.

During the course of Diversified's investigation, Mr. Denney submitted a second, written complaint with HR director Jubb on September 21, alleging discrimination, harassment, and retaliation stemming from being passed over for a spot on the City fire department's technical rescue team. Unlike Mr. Denney's prior complaint, his statement on September 21 contained details regarding dates and names. However, the statement still failed to tie Mr. Denney's allegations of unequal treatment to the categories of protected status identified in the City's policy.

HR director Jubb and City attorney Kintzley met in mid-October to discuss the most recent allegations, after which it was decided the matter would be best handled by the City attorney's office. As the most recent allegations were viewed as an extension of the initial complaint, Ms. Kintzley continued to believe Mr. Denney intended to file suit against the City.

To investigate the second complaint, Ms. Kintzley retained attorney Sarah Hale. Ms. Kintzley "instructed Ms. Hale that the purpose of the investigation was to determine the veracity of Mr. Denney's claims in order to facilitate [her] analysis of the City's potential liability exposure in an anticipated lawsuit, and to enable [her] to provide timely

10

No. 36720-7-III
*Denney v. City of Richland*

and accurate legal advice to the City." *Id*. at 190-91. As with Diversified, Ms. Kintzley later declared she would not have hired Ms. Hale or personally directed the investigation but for the perceived imminent threat of litigation. Consistent with the previous investigation, Ms. Kintzley later testified that the primary purpose of Ms. Hale's investigation was so that Ms. Kintzley would have sufficient information to assist her in a providing a legal risk assessment to the City, with the secondary purpose of fulfilling the City's obligation under its policy to exercise due diligence by promptly investigating Mr. Denney's allegations. As with the previous investigation, the City later asserted Ms. Hale's report would not have been created in a substantially the same form but for the perceived threat of litigation.

Ms. Hale submitted a final report of her investigation to Ms. Kintzley on February 21, 2017. As with the Diversified report, Ms. Hale's report[4] was marked as confidential and never made public. Ms. Hale's report was mostly comprised of her analysis of Mr. Denney's allegations of discrimination, unlawful harassment, and retaliation based on the evidence gathered during her investigation.

---

[4] As with Diversified's report, Ms. Hale's report was filed in the trial court under seal for in camera review, and is part of the sealed record on review.

11

No. 36720-7-III
*Denney v. City of Richland*

PROCEDURAL BACKGROUND

On November 8, 2016, Mr. Denney made a public records request for "[t]he full report that Diversified . . . sent the [C]ity regarding Chris Denney's Discrimination, Harassment, and Retaliation complaint. Also the 47 documents and policies and procedures that were reviewed as part of this investigation." *Id.* at 219. Mr. Denney ultimately received all requested records save Diversified's final report, which the City contended was protected attorney work product and not subject to release.

On May 18, 2017, Mr. Denney initiated a tort action against the City for employment discrimination, claims that encompassed the content of his complaints to Ms. Jubb.

On October 30, Mr. Denney commenced PRA litigation against the City arising out of the denial of his November 2016 request for the Diversified report.

On January 6, 2018, Mr. Denney made a second public records request for Ms. Hale's report. The City asserted this report was exempt from disclosure as attorney work product.

Mr. Denney amended his PRA complaint in April 2018 to include the City's withholding of Ms. Hale's report. Mr. Denney continued to contend that because there was no pending or threatened litigation at the time of the creation of the Diversified and

12

No. 36720-7-III
*Denney v. City of Richland*

Hale reports, the City could not withhold disclosure of the reports under the PRA's attorney work product exemption.

In January 2019, Mr. Denney and the City filed cross motions for summary judgment. After reviewing the summary judgment submissions and conducting an in camera review of the Diversified and Hale reports, the trial court ruled the reports were properly exempted from disclosure under the PRA as attorney work product. With no genuine issues of material fact remaining, the court granted summary judgment to the City and entered an order dismissing Mr. Denney's complaint with prejudice. A final judgment awarding costs to the City was entered just over a month later.

Mr. Denney filed his notice of appeal on April 1, 2019, more than 30 days after the dismissal order was entered (February 12), but less than 30 days after the final judgment was entered (March 14). *Denney v. City of Richland*, 195 Wn.2d 649, 652, 462 P.3d 842 (2020); *see also* CP at 342-53. This court dismissed the appeal as untimely, but on discretionary review the Supreme Court determined the untimely filing of the notice of appeal was an excusable error and remanded the case back to this court for consideration on its merits. *Denney*, 195 Wn.2d at 659-60.

No. 36720-7-III
*Denney v. City of Richland*

ANALYSIS

We review substantive PRA disputes de novo. RCW 42.56.550(3). When a PRA case is decided on summary judgment, we must view the facts in the light most favorable to the defeated party. *See Berger v. Sonneland*, 144 Wn.2d 91, 102-03, 26 P.3d 257 (2001). If the undisputed facts show that a public agency properly refused to release a record in response to a PRA request, summary judgment must be awarded to the agency.

The PRA is a strongly worded public mandate, requiring citizens be afforded access to public records. *Belenski v. Jefferson County*, 186 Wn.2d 452, 456-57, 378 P.3d 176 (2016). A public record "includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.56.010(3).

The PRA exempts certain records from production. "Consistent with its purpose of disclosure, the PRA directs that exemptions must be narrowly construed." *City of Lakewood v. Koenig*, 182 Wn.2d 87, 94, 343 P.3d 335 (2014); *see also* RCW 42.56.030. Nevertheless, "where a listed exemption squarely applies, disclosure is not appropriate." *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007) (plurality opinion); *see also* RCW 42.56.070(1).

14

No. 36720-7-III
*Denney v. City of Richland*

The parties agree that the two reports at issue in this case are public records. The question before us is whether the reports are subject to an exemption. The burden of establishing an exemption falls on the City. RCW 42.56.550(1). According to the City, the exemption governing this case is set forth at RCW 42.56.290. This is what is known as the "'controversy exemption.'" *Kittitas County v. Allphin*, 190 Wn.2d 691, 701, 416 P.3d 1232 (2018). The exemption states:

> Records that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts are exempt from disclosure under [the PRA].

RCW 42.56.290.

The controversy exemption extends to materials protected from discovery pursuant to CR 26, which among other things sets forth the standards for determining the discoverability of records in superior court civil proceedings. *Kittitas County*, 190 Wn.2d at 701. The City claims its two reports are protected from disclosure under CR 26(b)(4) as attorney work product. Thus, to the extent the two reports qualify as work product, they are exempt from disclosure under the PRA's controversy exemption.

*Work product protection and dual-purpose documents under the PRA*

Attorney work product includes documents and tangible things that are otherwise discoverable, but are "prepared in anticipation of litigation or for trial" by a party or the

15

No. 36720-7-III
*Denney v. City of Richland*

party's representative "(including a party's attorney, consultant, surety, indemnitor, insurer, or agent)." CR 26(b)(4). Litigation need not be ongoing for the work product protection to apply. *Soter*, 162 Wn.2d at 732. It need only be "'reasonably anticipated.'" *Id.* (quoting *Dawson v. Daly*, 120 Wn.2d 782, 791, 845 P.2d 995 (1993)). Work product includes not only research, theories, and memoranda of investigations, but also "formal or written statements of fact, or other tangible facts, gathered by an attorney in preparation for or in anticipation of litigation." *Limstrom v. Ladenburg*, 136 Wn.2d 595, 611, 963 P.2d 869 (1998).

Mr. Denney argues that because the reports at issue were required by the City's policy regardless of litigation, the reports do not, and cannot, qualify for work product protection. "The work product doctrine does not shield records created during the ordinary course of business." *Morgan v. City of Federal Way*, 166 Wn.2d 747, 754, 213 P.3d 596 (2009). Mr. Denney thus argues the records are not exempt from disclosure under the PRA.

Mr. Denney's argument that the reports cannot constitute work product, because the reports were prepared pursuant to the City's policy, is incorrect. Protected documents can have dual purposes. *See Soter*, 162 Wn.2d at 733; *In re Grand Jury Subpoena (Mark*

16

No. 36720-7-III
*Denney v. City of Richland*

*Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004).[5] CR 26(b)(4) does not

provide otherwise. The fact that a document has both a litigation and nonlitigation

purpose does not mean the document fails to qualify for work product protection.

If a document is purported to have dual purposes, it simply requires closer scrutiny.

*See United States v. Roxworthy*, 457 F.3d 590, 593-94, 599 (6th Cir. 2006).

Mr. Denney's reliance on *Morgan* to challenge the applicability of a dual-purpose

inquiry is misplaced. *Morgan* bears a superficial resemblance to the instant case in that it

involved a personnel investigation report prepared by the city of Federal Way. But unlike

this case, the city of Federal Way never claimed its report was prepared in anticipation of

litigation. *Morgan*, 166 Wn.2d at 755. The report was prepared purely for ordinary

business purposes. Because *Morgan* did not involve a claim of anticipated litigation, the

investigation report did not qualify for work product protection and there was no need to

engage in a dual-purpose analysis. Nothing in *Morgan* holds or suggests that a dual-

purpose analysis cannot apply to personnel investigation reports.

*Step one of the dual-purpose analysis—the "because of" test*

In the dual-purpose document context, the foundational question is whether the

---

[5] Federal jurisprudence provides "persuasive guidance" on the application of the work product doctrine. *Soter*, 162 Wn.2d at 739.

17

No. 36720-7-III
*Denney v. City of Richland*

document at issue truly has a litigation in addition to a nonlitigation purpose. Most federal courts have adopted what has been dubbed the "because of" test in making this inquiry. *See United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). The widespread application of the "because of" test in the context of the federal counterpart of CR 26 is discussed extensively in Wright's *Federal Practice and Procedure*. 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2024 (3d ed. 2010). Our Supreme Court appears to have followed the federal example. *See In re Det. of West*, 171 Wn.2d 383, 405, 256 P.3d 302 (2011). Thus, we apply the "because of" test, which asks whether the document in question was really created because of anticipated litigation.[6]

The "because of" test involves both a subjective and objective inquiry. *Roxworthy*, 457 F.3d at 594. We first ask whether the individual who prepared or ordered preparation of the document subjectively did so with the intent of preparing for litigation. *Id*. If the answer is in the affirmative, we then ask whether the subjective anticipation of litigation

_____

[6] The only well-articulated alternative to the "because of" test is the "primary purpose" test, which has been adopted by the United States Court of Appeals for the Fifth Circuit. *See, e.g.*, *United States v. El Paso Co.*, 682 F.2d 530, 542-44 (5th Cir. 1982). This is a more demanding approach than the "because of" test. *See United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010). The "primary purpose" test is inconsistent with the wording of CR 26(b)(4) and has generated little support.

18

No. 36720-7-III
*Denney v. City of Richland*

was objectively reasonable. *Id*. at 599. We look at the nature of the document and circumstances of the case to assess whether "the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *West*, 171 Wn.2d at 405 (quoting WRIGHT, MILLER & MARCUS, *supra*, at 502). This objective test keeps in mind that the work product rule cannot be so broad that it allows parties to avoid discovery "by adopting routine practices whereby all documents appear to be prepared in anticipation of litigation." *Doehne v. EmpRes Healthcare Mgmt., LLC*, 190 Wn. App. 274, 284, 360 P.3d 34 (2015).

*Step two of the dual-purpose analysis—substantially same form*

If the subjective and objective aspects of the "because of" test are met, then the work product protection applies unless we discern that the document would have been prepared in substantially the same form had there not been an expectation of litigation. *Roxworthy*, 457 F.3d at 599; *Grand Jury Subpoena*, 357 F.3d at 908; *Goosby v. Branch Banking & Trust Co.*, 309 F.Supp.3d 1223, 1236 (S.D. Fla. 2018). This appears to be a very narrow exception.[7] Even an ordinary nonlitigation business form will be protected as work product if it was prepared (subjectively and objectively) in anticipation of litigation

---

[7] Some courts conflate the "substantially same form" test with the "subjective/objective anticipation" test. *See Roxworthy*, 457 F.3d at 599; *Adlman*, 134 F.3d at 1204.

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 36720-7-III
*Denney v. City of Richland*

and the contents reflect this fact. *See Goosby*, 309 F.Supp.3d at 1234 (A standard banking

form qualifies for protection when it "'would not have been prepared in the way it was

prepared but for the anticipated litigation.'") (quoting *Adlman*, 134 F.3d at 1195).

*Application of the two-step analysis to the parties' case*

*1(a) subjective anticipation*

The uncontested evidence reveals City attorney Kintzley subjectively anticipated

litigation when she directed both Diversified and Ms. Hale to investigate and prepare

reports regarding Mr. Denney's discrimination and harassment complaints. Both reports

were designated as work product at their inception. The initial correspondence from

Ms. Kintzley to Diversified and Ms. Hale stated the purpose of each investigation was

potential litigation. And the reports from Diversified and Ms. Hale were both marked as

confidential work product.

The May 12, 2016, e-mail from Ms. Kintzley to Mr. Denney does not undermine

the City's claim of subjective intent. In the May 12 e-mail, Ms. Kintzley sought to

reassure Mr. Denney that her interests as the City attorney were not adverse to his. Read

in the light most favorable to Mr. Denney, the e-mail suggests Ms. Kintzley did not yet

anticipate litigation on May 12. But this does not help Mr. Denney. Diversified was not

retained until late July, and Ms. Hale was not retained until November. Ms. Kintzley has

20

No. 36720-7-III
*Denney v. City of Richland*

testified that it was not until after May 12 that she determined Mr. Denney's behavior was indicative of someone posturing for litigation. The evidence supporting Ms. Kintzley's assertion of subjective intent is overwhelming and uncontested.

### *1(b) objective reasonableness*

Not only did Ms. Kintzley subjectively anticipate litigation when she ordered the two investigation reports, her assessment of the prospect of legal action was objectively reasonable. Mr. Denney's repeated assertions that he did not trust HR, and his refusal to provide detailed information as required by the City's policy, was not indicative of someone seeking to work with his employer toward corrective action to resolve a workplace dispute. Instead, Mr. Denney made clear that he believed the City was against him and that his goal was for an outside entity to validate his point of view. It does not require many logical inferences to discern that Mr. Denney's ultimate goal was litigation.

### *Substantially same form*

Having determined the subjective and objective tests are met, we analyze whether the reports would have been created in substantially the same form despite the prospect of litigation.

As an initial point, the process by which the reports were created was unusual. Ordinarily, the City handles workplace complaints through its HR department. The City

21

No. 36720-7-III
*Denney v. City of Richland*

attorney's office is not typically involved. Furthermore, even when the City attorney's office is consulted, the City attorney does not typically retain an outside agency to help with an investigation. Had it not been for the anticipation of litigation, it is doubtful that Diversified or Ms. Hale would have authored an investigation report.

The reports are also unique in terms of substance. For one thing, the reports focus on discerning the nature of Mr. Denney's workplace complaints. This would not have been necessary had Mr. Denney complied with the City's policy requiring a detailed statement from a complainant. In addition, the reports were centered on the narrow issue of whether Mr. Denney could make a legal claim for discrimination or unlawful harassment. They did not address potential remedial action—such as management practices or workplace improvements—that one would expect of an ordinary HR report. By focusing exclusively on the merits of Mr. Denney's claims, the thrust of the two reports was to advise the City attorney's office as to whether Mr. Denney would likely succeed in a legal claim of discrimination or unlawful harassment. This is a quintessential feature of a work product document, not an ordinary business record.

## CONCLUSION

The reports at issue were generated because of anticipated litigation and would not have been prepared in substantially the same form had the City not been concerned about

22

No. 36720-7-III
*Denney v. City of Richland*

litigation. The reports therefore qualify for work product protection and are protected

from disclosure under the PRA's controversy exemption, RCW 42.56.290.[8]

The trial court's summary judgment dismissal of Mr. Denney's complaint is

affirmed. Mr. Denney's request for attorney fees is denied.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Staab, J.

_____

[8] In a footnote in his briefing, Mr. Denney argues that the trial court erred by granting summary judgment to the City because the reports at issue were not entirely attorney work product, and should have been disclosed with redactions of exempt content. We will not review this argument as it has not been properly raised. *State v. Johnson*, 69 Wn. App. 189, 194 n.4, 847 P.2d 960 (1993).